1  NICOLLE L. JACOBY (admitted *pro hac vice*)
   nicolle.jacoby@dechert.com
2  OLIVIER P. STRAUCH (admitted *pro hac vice*)
   olivier.strauch@dechert.com
3  DECHERT LLP
   30 Rockefeller Plaza
4  New York, NY  10112-2200
   Telephone:  212.698.3500
5  Facsimile:   212.698.3599

6  H. JOSEPH ESCHER III (No. 85551)
   h.joseph.escher@dechert.com
7  FRANCE JAFFE (No. 217471)
   france.jaffe@dechert.com
8  DECHERT LLP
   One Maritime Plaza
9  Suite 2300
   San Francisco, CA  94111-3513
10 Telephone:  415.262.4500
   Facsimile:   415.262.4555

11

12 Attorneys for Defendants
   AIG MATCHED FUNDING CORP.,
13 AIG FINANCIAL SECURITIES CORP.,
   BANQUE AIG, AIG FINANCIAL PRODUCTS
14 CORP., AMERICAN INTERNATIONAL GROUP,
   INC., and BANQUE AIG

15

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                          SAN JOSE DIVISION

19

20 RICHARD T. THIERIOT, an individual,          Case No. C-07-05069 JW RS

21                Plaintiff,                    Action Filed:  October 2, 2007

22 v.                                           DEFENDANTS' NOTICE OF MOTION AND
                                                MOTION TO DISMISS AND STRIKE;
23 AIG MATCHED FUNDING CORP.,                   MEMORANDUM OF POINTS AND
   AIG FINANCIAL SECURITIES CORP.,              AUTHORITIES
24 AIG FINANCIAL PRODUCTS CORP.,                (Fed. R. Civ. P. 9(b), 12(b)(6), 12(f))
   AMERICAN INTERNATIONAL
25 GROUP, INC., BANQUE AIG, and DOES
   ONE THROUGH THIRTY, inclusive,              Date:      April 7, 2008
26                                             Time:      9:00 a.m.
                 Defendants.                   Dep't:     Courtroom 8, 4th Floor
27                                             Judge:     Honorable James Ware

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                        MOTION TO DISMISS & STRIKE          C-07-05069 JW RS

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

INTRODUCTION AND ................................................................................................................. 1

SUMMARY OF ARGUMENT ...................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 3

ALLEGATIONS OF THE COMPLAINT .................................................................................... 6

ARGUMENT .................................................................................................................................... 8

I.     PLAINTIFF'S CLAIMS ARE TIME-BARRED ........................................................ 8

     A.     New York Law Governs This Dispute ........................................................ 8

     B.     The Fraud Cause Of Action Is Time-Barred ......................................... 11

     C.     The Unjust Enrichment Cause Of Action Is Untimely ........................ 13

     D.     The UCL Claim Is Time-Barred ............................................................. 14

II.     PLAINTIFF FAILS TO ALLEGE ANY FALSE STATEMENT BY ANY OF THE DEFENDANTS OR ANY DUTY TO DISCLOSE AND FAILS TO PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(B) .............. 15

     A.     No Statements Are Attributed To Any Defendant .................................. 15

     B.     The Complaint Fails To Meet The Standards of Fed. R. Civ. P. 9(b)....... 15

     C.     The Contractual Disclaimers Bar The Fraud Claim............................... 16

     D.     Plaintiff Does Not And Cannot Allege Any Duty To Disclose, And Thus Has No Claim Based On Omissions .................................................. 18

     E.     The Written Contracts Demonstrate That Allegedly "Concealed" Facts Were Actually Expressly Disclosed. ................................................. 19

III.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE THE RELATIONSHIP IS GOVERNED BY CONTRACT ........................................ 20

IV.     THE CALIFORNIA UNFAIR BUSINESS PRACTICES LAW ("UCL") DOES NOT APPLY ................................................................................................. 22

V. PLAINTIFF HAS WAIVED HIS RIGHT TO JURY TRIAL .................................... 23

CONCLUSION ............................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbatiello v. Monsanto Co.,*
522 F. Supp. 2d 524 (S.D.N.Y. 2007)........................................................... 15, 16, 18

*Asian Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ.,*
944 F. Supp. 1169 (S.D.N.Y. 1996)......................................................... 19

*Casa Herrera, Inc. v. Beydoun,*
32 Cal. 4th 336 (2004) ................................................................. 20

*CIBC Bank & Trust Co. [Cayman] Ltd. v. Credit Lyonnais,*
270 A.D.2d 138, 704 N.Y.S.2d 574 (1st Dep't 2000) ............................... 18

*Clark-Fitzpatrick, Inc. v Long Island R. R. Co.,*
70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987) ........................................ 20

*Community Cause v. Boatwright,*
124 Cal. App. 3d 888 (1st Dist 1981) ............................................... 13

*Consul Ltd. v. Solide Enters, Inc.,*
802 F.2d 1143 (9th Cir. 1986)......................................................... 9, 10

*Continental Airlines Inc. v. Mundo Travel Corp.,*
412 F. Supp. 2d 1059 (E.D. Cal. 2006)............................................. 22

*Conwill v. Arthur Andersen LLP,*
12 Misc. 3d 1171A, 2006 N.Y. Misc. LEXIS 1527 (June 21, 2006).................. 17, 18

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1997)........................................................ 16

*Cumming v. City of San Bernardino Redevelopment Agency,*
101 Cal. App. 4th 1229 (4th Dist. 2002) ......................................... 13

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
822 F.2d 1242 (2d Cir. 1987)......................................................... 16

*Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.,*
No. 05 Civ. 8510 (DAB), 2007 U.S. Dist. LEXIS 11346 (S.D.N.Y. Feb. 8, 2007) ........ 17

*Emrich v. Touche Ross & Co.,*
846 F.2d 1190 (9th Cir. 1988).......................................................... 3

*Enron Corp. v Bank of Amer.,*
292 B.R. 752 (Bankr. S.D.N.Y. 2003) .............................................. 18

*Fagan v. First Sec. Invs., Inc.,*
No. 04 Civ. 1021 (LTS) (THK), 2006 U.S. Dist. LEXIS 66065
(S.D.N.Y. Sept. 15, 2006) ............................................................ 15

*Feldman v. Granger* 255 Md. 288,
A.2d 421 (1969) ........................................................................ 13

*Florida ex. rel. Butterworth v. Exxon Corp.,*
109 F.3d 602 (9th Cir. 1997)........................................................... 20

*Gerlinger v. Amazon.com, Inc.,*
311 F. Supp. 2d 838 (N.D. Cal. 2004) .............................................. 20

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

# TABLE OF AUTHORITIES

**Page**

3

*Harriman v. Northern Sec. Co.*,
    197 U.S. 244 (1905) ............................................................................ 22

4

*Harsco Corp. v Segui*,
    91 F.3d 337 (2d Cir. 1996) ................................................................ 17

5

*Helfer v. Hubert*,
    208 Cal. App. 2d 22 (1962) ............................................................... 11

6

*Hobart v. Hobart Estate Co.*,
    26 Cal. 2d 412 (1945) ........................................................................ 11

7

*Hokama v. E.F. Hutton & Co.*,
    566 F. Supp. 636 (C.D. Cal. 1983) .................................................... 16

8

9

*Hughes Elecs. Corp. v. Citibank Delaware*,
    120 Cal. App. 4th 251 (2004) ........................................................ 9, 10

10

*Hughes v. BCI Int'l Holdings*, No. 05 Civ. 9085 (HB),
    2007 U.S. Dist. LEXIS 21666 (S.D.N.Y. Mar. 27, 2007) ................ 15

11

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir. 1993) ................................................................ 20

12

*International Multifoods Corp. v. Commercial Union Ins. Co.*,
    98 F. Supp. 2d 498 (S.D.N.Y. 2000) ................................................. 10

13

14

*J.A.O. Acquisition Corp. v. Stavitsky*,
    18 A.D.3d 389, 795 N.Y.S.2d 569 (1st Dep't 2005) ........................ 15

15

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ............................................................................ 8

16

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................. 3

17

18

*Malmsteen v. Berdon, LLP*,
    477 F. Supp. 2d 655 (S.D.N.Y. 2007) ............................................... 18

19

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ............................................... 20

20

*McKeown v. First Interstate Bank*,
    194 Cal. App. 3d 1225 (1987) ........................................................... 12

21

*McNamara v. City of New York*,
    No. 05 CV 6026 (SJ) (RML), 2007 U.S. Dist. LEXIS 25015
    (E.D.N.Y. Mar. 30, 2007) .................................................................. 15

22

23

*Medimatch, Inc. v. Lucent Techs., Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) ............................................... 22

24

*Melville v. Kennedy*,
    18 Cal. 3d 335 (1976) ........................................................................ 18

25

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ......................................................... 15, 16

26

27

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ............................................................. 16

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) .................................................................................. 8, 9, 10

*Okura & Co. (Am.) v. Careau Group*,
    783 F. Supp. 482 (C.D. Cal. 1991)................................................................. 23

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000)............................................................... 20

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
    68 F.3d 1478 (2d Cir. 1995)............................................................................ 18

*Resolution Trust Corp. v. BVS Dev., Inc.*,
    42 F.3d 1206 (9th Cir. 1994) .......................................................................... 19

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*,
    No. 07 Civ. 3494 (DLC), 2007 U.S. Dist. LEXIS 51081
    (S.D.N.Y. July 17, 2007) ................................................................................ 15

*River Colony Estates Gen. P'ship. v. Bayview Fin. Trading Group, Inc.*,
    287 F. Supp. 2d 1213 (S.D. Cal. 2003) .......................................................... 11

*Roots Ready Made Garments v. Gap Inc.*,
    No. C 07-03363 CRB, 2007 U.S. Dist. LEXIS 81108 (N.D. Cal. Oct.18, 2007) ............... 13, 14

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)............................................................................. 3, 4

*Seippel v. Jenkens & Gilchrist, PC*,
    341 F. Supp. 2d 363 (S.D.N.Y. 2004)......................................................... 18, 19

*Shemtob v. Shearson, Hammill & Co.*,
    448 F.2d 442 (2d Cir. 1971)............................................................................ 16

*Stern v. Leucadia Nat'l Corp.*,
    844 F.2d 997 (2d Cir. 1988)............................................................................ 16

*Taylor v. Philip Morris, Inc.*,
    No. C 03-0758MMC, 2003 U.S. Dist. LEXIS 18807 (N.D. Cal. Oct. 20, 2003) ...................... 4

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).......................................................................... 16

*Von Brimer v. Whirlpool Corp.*,
    536 F.2d 838 (9th Cir. 1976)............................................................................ 11

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) .......................................................... 16

*Wender v. Gilberg Agency*,
    276 A.D.2d 311, 312 N.Y.S.2d 40 (1st Dep't 2000) ...................................... 14

## Statutes and Rules

Fed. R. Civ. P. 9(b) ............................................................................................. 2

Fed. R. Civ. P. 12(b)(6)....................................................................................... 1

Fed. R. Civ. P. 12(f) ............................................................................................ 1

Cal. Bus. & Prof. Code § 17200 ................................................................. 1, 2, 14

Cal. Bus. & Prof. Code § 17208 ........................................................................ 14

Cal. C.C.P. § 338(d)........................................................................................... 11

1

2

3

4

5

Cal. C.C.P. § 339(1) ............................................................................................................... 13

NY CPLR § 202 ..................................................................................................................... 10

NY CPLR § 213(2) ................................................................................................................ 14

NY CPLR § 213(8) ................................................................................................................ 11

NY CPLR § 214(2) ................................................................................................................ 14

N.Y. General Business Law § 349 ......................................................................................... 14

6

**Other Authorities**

7

8

3 Witkin, *Cal. Proc. 4th*, Actions, § 508 (1996) ................................................................. 14

*Restatement Second of Conflicts of Laws*, section 187 ........................................................ 8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 7, 2008, in Courtroom 8, of the above-titled United States District Court, at 9:00 a.m. or as soon thereafter as the matter may be heard, before the Honorable James Ware, defendants AIG Matched Funding Corp. ("AIG-MF"), AIG Financial Securities Corp. ("AIG-FS"), Banque AIG ("Banque"), AIG Financial Products Corp. ("AIG-FP"), and American International Group, Inc. ("AIG, Inc.") (collectively, "Defendants" or "AIG"), will, and hereby do, move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing plaintiff Richard T. Thieriot ("Plaintiff")'s claims of fraud, unjust enrichment, and violation of the California Unfair Business Practices Act, California Business & Professions Code section 17200. Defendants also move to strike the jury demand pursuant to Rule 12(f).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION AND
SUMMARY OF ARGUMENT**

Almost eight years ago, Plaintiff's family trusts and family limited liability company entered into a set of transactions for which Plaintiff claimed significant tax benefits. Complaint ("Compl.") ¶¶ 12, 26. That set of transactions involved the services of a major accounting firm, Arthur Andersen ("Andersen"), and a nationally-recognized law firm, Sidley Austin Brown & Wood ("Sidley"), neither of which is named as a defendant in this case. *Id.* ¶¶ 14, 16. As early as February, 2001, Plaintiff alleges that he received an opinion letter from Sidley advising him that despite the existence of an IRS notice that tax losses from inflated basis transactions would not be allowable as deductions, Sidley's view was that the IRS would likely recognize the losses from the transactions arranged by Plaintiff. *Id.* ¶¶ 22-24. Nearly four years ago the Internal Revenue Service disallowed the tax losses claimed by the family entities in an amount over $50,000,000, giving rise to the damages alleged in this Complaint. *Id.* ¶ 12 ("Plaintiff has been assessed approximately $56 million in back taxes, interest and penalties as a result"), *id.* ¶ 30 ("Plaintiff has been injured by the $7 million in fees and commissions charged for the transaction . . ." and

1    listing other alleged injuries).

2            Despite the obvious passage of time and absence of all the players who actually advised

3    Plaintiff in these transactions, Plaintiff has now brought a complaint against a variety of AIG

4    entities, *none of whom provided any such advice*.  In particular, Plaintiff provides no factual

5    allegations whatsoever that AIG gave him tax, legal or investment advice, advised him to enter

6    into the transactions for tax purposes or otherwise, advised him to claim tax losses in connection

7    with the transactions, or even suggested that tax losses *could* be claimed in connection with the

8    transactions.

9            In stark contrast to the roles played by Andersen and Sidley as Plaintiff's accounting, tax

10   and legal advisers, AIG's role in these transactions was well-defined and strictly limited:  AIG

11   served as a counterparty on option transactions, and issued notes.  This arm's-length relationship

12   was governed by written agreements with Plaintiff's family entities.  Plaintiff relies on those

13   written agreements in his Complaint, but fails to attach them as exhibits or to describe their terms.

14   *See*, *e.g.*, *id.* ¶ 12.

15           All of Plaintiff's claims are barred by the applicable statutes of limitations because,

16   among other things, judicially-noticeable court filings show that he started litigation with the IRS

17   regarding these transactions more than three years prior to filing this action.  Each of the three

18   causes of action also is defective for other, substantive reasons.  The first cause of action, for

19   fraud, fails because the Complaint fails to allege a single false statement by AIG, much less

20   comply with the stringent particularity requirements of Federal Rule of Civil Procedure 9(b).

21   Moreover, Plaintiff cannot state a claim based on an alleged "duty to disclose" due to the express

22   contractual disclaimers of any fiduciary relationship or reliance on AIG by Plaintiff, found in the

23   written agreements that Plaintiff failed to attach to the Complaint.  The second cause of action,

24   for unjust enrichment, fails because written contracts govern the alleged relationship.  The third

25   cause of action, for violation of the California Unfair Business Practices Act, California Business

26   & Professions Code section 17200 ("UCL"), is improperly pled because New York law, not

27   California law, applies to all claims relating to the agreements and relationship.

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FACTUAL BACKGROUND**

In March of 2000, Banque entered into written agreements with each of ten Thieriot family trusts (the "Trusts") and one written agreement with the J.P. Thieriot Investment Group, LLC (the "LLC"). *See* Compl. ¶¶ 12, 17. Plaintiff repeatedly refers to these contracts, which are integral to all three of his claims, *see, e.g.*, Compl. ¶¶ 9, 11, 12, 14, 16, 17, 18, 19, 23, 28, 34, 38. The agreements, whose authenticity is not in dispute, are thus properly considered by this Court on this motion, and do not convert Defendants' motion to a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").[1] The agreements explicitly confirm that Banque and the other Defendants did not advise Plaintiff in any way, shape or form with respect to the transactions Plaintiff now complains were improper. Plaintiff alleges no breach of contract by Banque or the other Defendants in connection with those transactions.

Pursuant to these agreements, each of which specifies application of New York law, Banque and the Trusts and LLC bought and sold call options (the "Basket Options"). In a separate U.S. Tax Court proceeding, *Parrott Enterprises, LLC, Angelica Thieriot, Tax Matters Partner, v. Commissioner*, No. 1930-04 (U.S. Tax Court) (the "Tax Court Action"), Plaintiff has stated that these Basket Options were purchased to protect his family's wealth against the wild fluctuations the stock market experienced during this period and to make a profit. *See* Request for Judicial Notice ("RJN"), Ex. 1 (July 8, 2004 Petition for Readjustment) at 5(j), (k).[2] Plaintiff

---

[1] The eleven agreements are identical in all material respects. Accordingly, for the convenience of the Court, Defendants provide herewith the relevant documents comprising the agreement between Banque and the LLC as illustrative of all the agreements. *See* Declaration of Olivier P. Strauch ("Strauch Decl.") and Exhibits A-F thereto.

[2] Defendants respectfully request that this Court take judicial notice of the Tax Court Action. Judicial notice of matters of public record, such as other judicial proceedings and pleadings filed therein, is proper and does not convert this motion into one for summary judgment. *See, e.g., Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988); *Rothman v. Gregor*, 220 F.3d

1   has denied that the purpose of the Basket Option transactions was to avoid legally-owed taxes.

2   *Id.* at 5(a), (m).

3       AIG's only alleged involvement in this case arises out of Banque's execution of the

4   eleven Basket Options with the Trusts and the LLC.  AIG-FS acted as the registered U.S. broker-

5   dealer on the trades; AIG, Inc. guaranteed its subsidiary Banque's obligations.  *See* Strauch Decl.

6   Ex. A (ISDA Master Agreement, Exhibit A thereto (General Guarantee of American International

7   Group, Inc.)).  The Basket Options consisted of (1) Banque *buying* from a Trust or the LLC a call

8   option, which gave Banque the right to acquire an interest in a defined set or "basket" of largely

9   media-industry stocks at a determined strike price, and (2) Banque *selling* to a Trust or the LLC a

10  less expensive call option, which gave the Trust or LLC the right to acquire an interest in the

11  same "basket" of stock, at a higher strike price, with the same expiration dates as the options

12  Banque bought.  Strauch Decl. Exs. B-C.  At the same time, each Trust and the LLC purchased a

13  zero-coupon note issued by AIG-MF (and guaranteed by AIG, Inc.) (the "Notes").  The Notes

14  were in amounts sufficient to cover the maximum net obligation that could be owed to Banque

15  under the Basket Options, and were pledged as collateral to secure those obligations.  *See* Strauch

16  Decl. Exs. D-F.  Plaintiff does not allege that AIG-FP played any role in the transactions, but

17  alleges only that AIG-FP "and/or . . . its subsidiaries" have "involvement" in the Son of Boss

18  transactions in California.  Compl. ¶ 8.

19      The Basket Options were undertaken pursuant to, and explicitly governed by the terms of,

20  eleven essentially identical ISDA Master Agreements between Banque and each Trust and the

21  LLC.  Each ISDA Master Agreement, including the LLC's agreement (executed by Plaintiff on

22  behalf of the LLC), expressly provides that Banque and the other Defendants were not fiduciaries

23  for, or advisors to, the Trusts or LLC:

24          Party B [*i.e.*, the Trusts and the LLC, in their respective
            agreements] hereby represents to Party A [*i.e.*, Banque] that:-
25

26  81, 92 (2d Cir. 2000).  This Court may also properly take judicial notice of the allegations
    contained in Plaintiff's previously-filed Tax Court Action, including for purposes of analyzing the
27  timing of notice for statute of limitations purposes.  *See., e.g.*, *Taylor v. Philip Morris, Inc.*, No. C
    03-0758MMC, 2003 U.S. Dist. LEXIS 18807, at *4 (N.D. Cal. Oct. 20, 2003).
28

1            *. . . Party B is solely responsible for Party B's trading or investment*
2            *decisions* with respect to this Agreement and each Transaction
   entered under this Agreement; and **. . .** *Party B is not relying on*
3            *[Banque] or any affiliate thereof in connection with any such*
   *decisions, and neither [Banque] nor any such affiliate is acting as*
4            *an advisor to or fiduciary of Party B in connection with any*
   *Transaction under this Agreement . . .*

5  Strauch Decl. Ex. A (ISDA Master Agreement, Schedule, §5(f)(v)) (emphasis added)).

6         The Trusts and LLC further represented that:

7            *. . . Party B has sufficient knowledge, experience and access to*
8            *professional advice to make Party B's own legal, tax, accounting*
   *and financial evaluation* of the merits and risks of entering into this
9            Agreement and each Transaction hereunder, *has reviewed the*
   *documentation relating to this Agreement and each Transaction*
10           *hereunder carefully with Party B's financial, legal and tax advisors*
   …*Party B acknowledges and understands that Transactions*
11           *entered into under this Agreement may involve complex legal, tax*
   *and regulatory considerations* that are highly dependent on facts
12           and circumstances related to Party B**,** *that [Banque] will have*
   *insufficient information regarding such facts and circumstances to*
13           *determine the legal, tax and regulatory consequences of such*
   *Transactions for Party B and that Party B, together with its legal,*
14           *tax and financial advisors, will be solely responsible for*
   *determining and evaluating such consequences and making its own*
15           *independent decisions* with respect to such Transactions based on
   such determinations and evaluations and any other factors or
16           considerations deemed relevant by Party B or its advisors.

17 Strauch Decl. Ex. A (ISDA Master Agreement, Schedule, §5(f)(vi)) (emphasis added).

18        In addition, in each of the ISDA Master Agreements, the LLC and the Trusts expressly

19 acknowledged that:

20           *. . . In connection with this Transaction … [Banque] has paid a fee*
21           *to Arthur Andersen LLP for its assistance in arranging the*
   Transaction.  *[Banque] has paid fees to Arthur Andersen LLP for*
22           *arranging similar transactions in the past and may do so again in*
   *connection with future transactions.*
23
   Strauch Decl. Ex. A (ISDA Master Agreement, Schedule, §5(f)(viii)) (emphasis added).

24        Each ISDA Master Agreement further provides that it is to "be governed by and construed

25 in accordance with New York law."  Strauch Decl. Ex. A (ISDA Master Agreement, Schedule,

26 §4(h)).[3]  In addition, each ISDA Master Agreement specifies in relevant part that the "Master

27 ────────────────────

28 [3]    In addition, New York law is expressly selected in the AIG, Inc. Guarantee, Confirms, Note

1    Agreement and all Confirmations form a single agreement between the parties" and contains a

2    merger clause stating that the ISDA Master Agreement "constitutes the entire agreement and

3    understanding of the parties with respect to its subject matter and supersedes all oral

4    communication and prior writings with respect thereto." Strauch Decl. Ex. A (ISDA Master

5    Agreement §§ 1(c), 9(a)). The parties to each ISDA Master Agreement waived their right to a

6    jury trial to the extent permitted by applicable law. *See* Strauch Decl. Ex. A (ISDA Master

7    Agreement, Schedule §4(k)).

8        Although not alleged in the Complaint, on July 8, 2004, Plaintiff filed a petition

9    ("Petition") in the Tax Court Action challenging the IRS's opposition to the tax treatment he had

10   claimed for the transactions. *See* RJN Ex. 1. More than three years after commencing the Tax

11   Court Action, Plaintiff brings the instant case alleging that Defendants are liable for the penalties

12   assessed by the IRS, as well as punitive damages, attorneys' fees and other professional fees.

13                    **ALLEGATIONS OF THE COMPLAINT**

14       Plaintiff alleges that "[i]n or about 2000, Mr. Thieriot was []presented by his long-time tax

15   and investment advisor at Arthur Andersen LLP . . . with an investment strategy that later became

16   known as the 'Son of BOSS.'" Compl. ¶ 12. Despite alleging that the "Son of BOSS"

17   transaction was "presented" to him *by Arthur Andersen*, Plaintiff asserts in the most general terms

18   that *Defendants* designed and promoted the transactions to him; that *Defendants* knew or should

19   have known it would be challenged by the IRS and would not provide the allegedly-promised tax

20   benefits; and that *Defendants* induced him to enter into the transactions through unspecified

21   advice and omissions. *See, e.g.*, *id*. ¶¶ 5-12, 16-20, 23-25. Plaintiff alleges that the IRS audited

22   his 2000 tax returns and disallowed the tax losses he had claimed in connection with the

23   transactions. *Id*. ¶ 26. Plaintiff seeks the return of the fees he allegedly paid in connection with

24   the transactions, consequential damages including costs incurred in responding to the IRS audit,

25   penalties and back taxes, punitive damages, and an injunction enjoining Defendants from, among

26

27   Purchase Agreement, Notes, and Pledge Agreement. *See* Strauch Decl. Ex. A, Exhibit A thereto
     (AIG, Inc. Guarantee) §8; *id*. Exs. B-C at 1; *id*. Ex. D at 8; *id*. Ex E (Notes §11); *id*. Ex. F §20.
28

1    other things, promoting tax shelters and preparing tax returns involving tax shelters. *See id.*

2    ¶¶ 10, 30, Prayer for Relief.

3        Plaintiff alleges in conclusory terms that he "reasonably relied on the tax advice,

4    investment advice and professional services rendered by defendants." Compl. ¶ 19. However, the

5    Complaint *does not identify a single affirmative statement, allegedly misleading or otherwise,*

6    *made by any Defendant.* In fact, the *only* affirmative statements alleged in the Complaint are

7    attributed to the law firm Sidley, which has not been named as a defendant. Sidley allegedly

8    "opined that Plaintiff's transactions had lawful tax benefits that were likely to be recognized by

9    the IRS," *id.* ¶ 16, and "provided a further opinion letter to Mr. Thieriot advising him that, even

10   with the issuance of notice 2000-44, the IRS would likely recognize any losses resulting from

11   Plaintiff's Son of BOSS strategy." *Id.* ¶ 24. With respect to Defendants AIG-MF, AIG-FS, and

12   Banque, Plaintiff alleges only that they "purposefully established contacts with California in

13   participating in the Son of BOSS transactions." *Id.* ¶¶ 5, 6, 7. As to AIG, Inc. and AIG-FP,

14   Plaintiff alleges only that they "purposefully established contacts with California through its

15   involvement *and/or the involvement of its subsidiary[ies]* in the Son of BOSS transactions."

16   *Id.* ¶¶ 8, 9 (emphasis added).

17       The remaining allegations of the Complaint either refer generically to "Defendants" or

18   "AIG" without attributing any specific conduct or statement to any Defendant, or consist of vague

19   assertions, frequently in the passive voice, that do not attribute any statement to any particular

20   Defendant, or often to any person at all.[4]

21       Although Plaintiff alleges that "defendants made numerous knowingly false affirmative

22

23   _____

     [4] *See, e.g., id.* ¶ 12 ( "[a]t the time that Plaintiff considered and entered the strategy, however, *it*

24   *was never referred to* [as "Son of BOSS"] and *was simply marketed* as a sound investment
     strategy that provided additional, legal tax benefits"); *id.* ¶ 12 ("Plaintiff, however, *was*

25   *misinformed and misled* about the nature and soundness of the Son of BOSS strategy, which in
     fact, has been determined by the IRS to be an abusive and illegal tax shelter . . ."); *id.* ¶ 16 ("the

26   documentation and information *provided to Plaintiff* about the Son of BOSS strategy . . . made it
     appear to be a sound investment strategy with lawful tax benefits . . ."); *id.* ¶ 16 ("Plaintiff *was*

27   *specifically advised* that the strategy sold to him was a customized, unique investment
     strategy . . .") (all emphasis added).

28

1    representations," the Complaint provides only two purported "examples": "creating

2    documentation to make the Son of BOSS transaction appear to be a legitimate strategy with

3    lawful tax benefits; [and] creating documentation to make the Son of BOSS transaction appear to

4    be a customized and unique transaction created specifically for Plaintiff, when, in fact, it was a

5    strategy mass-marketed to numerous other clients and taxpayers . . . ." *Id.* ¶ 28.  *See also, e.g., id.*

6    ¶ 17 ("Plaintiff signed, in California, boilerplate documentation presented to them [sic] . . .

7    [which] gave the Son of BOSS transaction the false semblance of a legal and legitimate business

8    investment").  However, Plaintiff does not describe, quote from, or summarize the relevant

9    contents of any such "documentation."  Nor does Plaintiff specify who created such

10    documentation, who provided it to Plaintiff, how it was provided to him, or when he received it,

11    let alone specifically allege any statements that were false or misleading.

12        Plaintiff also alleges in non-specific terms that Defendants "concealed," (1) that the

13    transaction was "mass marketed," *see id.* ¶¶ 14, 16; 23; (2) that unspecified Defendants paid

14    referral fees to Arthur Andersen, *see id.* ¶¶ 13, 17, 18, 28; (3) that Sidley's opinion letters had

15    been "mass-generated," *id.* ¶ 28, *see also id.* ¶ 16; and (4) that the IRS challenged "Son of BOSS"

16    transactions similar to the ones at issue, either before *or after* the transactions were executed, *see*

17    *id.* ¶¶ 21, 22, 23, 28.

18                              **ARGUMENT**

19                                  **I.**

20                  **PLAINTIFF'S CLAIMS ARE TIME-BARRED**

21    **A.    New York Law Governs This Dispute.**

22        As a threshold matter, New York law applies to the contracts at issue in this case.  Federal

23    district courts apply the choice of law doctrine of the states in which they sit.  *See Klaxon Co. v.*

24    *Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  California courts follow the *Restatement Second of*

25    *Conflicts of Laws*, section 187, which strongly favors enforcement of choice of law provisions

26    where freely and voluntarily agreed upon.[5]  *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th

---

[5]    Plaintiff alleges that the "paperwork was voluminous and highly technical, and it was
presented to Plaintiff for signature without any negotiation of any venue, jurisdiction or choice of

1    459, 465 (1992).  California courts will enforce a contractual choice of law provision so long as

2    "the chosen state has a substantial relationship to the parties or their transaction," *or* "there is any

3    other reasonable basis for the parties' choice of law."  *Id*. at 466.  If either test is met, the court

4    will enforce the provision unless "the chosen state's law is contrary to a *fundamental* policy of

5    California."  *Id*. (emphasis in original).  If no conflict exists, the provision is applied; if such a

6    conflict exists, California will apply its own law only if it finds it has a "materially greater interest

7    than the chosen state in the determination of the particular issue."  *Id. at 465*; *see also, e.g.,*

8    *Consul Ltd. v. Solide Enters, Inc.*, 802 F.2d 1143, 1147 (9th Cir. 1986); *Hughes Elecs. Corp. v.*

9    *Citibank Delaware*, 120 Cal. App. 4th 251, 259 (2004).

10           Because in many instances there is no conflict between California and New York law,

11   either law could apply with the same result.  However, where there is a conflict, this Court should

12   apply New York law to *all* of Plaintiff's claims, including the fraud claim.  Enforcement of a

13   contractual choice of law provision that, as here, states that an agreement "will be governed by

14   and construed in accordance with [New York] law," requires a California court to apply New

15   York law to "*to all causes of action arising from or related to their contract*."  *Nedlloyd*, 3 Cal.

16   4th at 468 (emphasis added).  "When a rational businessperson enters into an agreement

17   establishing a transaction or relationship and provides that disputes arising from the agreement

18   shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she

19

20   law clauses contained therein."  Compl. ¶ 17.  There is no allegation that Plaintiff was somehow
     tricked or coerced into signing the "paperwork."  Nor could there be, given express
21   representations that, among other things, the Trusts and LLC had "reviewed the documentation
     relating to this Agreement and each transaction thereunder carefully with [their] financial, legal
22   and tax advisors and ha[ve] determined that entering into this Agreement and each transaction
     hereunder is consistent with [their] objectives."  *See supra* p. 5.  Indeed, as Plaintiff
23   acknowledged in the ongoing Tax Court Action, he relied on the advice of both legal and tax
     counsel in entering into the transactions.  *See* RJN, Ex. 1 at 6 (m) (Plaintiff was "advised by its
24   nationally recognized and qualified legal tax adviser that there was substantial authority for the
     tax positions taken on their tax returns.  Moreover, the Thieriot family reasonably relied in good
25   [] faith on its nationally recognized and qualified tax professional that there was a greater than 50
     percent likelihood that the tax treatment would be upheld if challenged by the IRS"); *id*., Ex. 2
26   (Order dated Oct. 31, 2006) at 1 (concluding that Plaintiff's reliance on advice of counsel defense
     waived Plaintiff's attorney-client privilege on that issue).
27

28

1    intended that law to apply to *all* disputes arising out of the transaction or relationship." *Id.* at 469.

2    Each of Plaintiff's claims clearly arises from the transactions and/or the relationship created by

3    the controlling written agreements – the ISDA Master Agreements and Confirms.

4        This Court should enforce the New York choice of law provision selected by the parties in

5    the ISDA Master Agreements as well as in the Confirms, Note Purchase Agreement, Notes,

6    Pledge Agreement and AIG, Inc. Guarantee.  The Complaint alleges that AIG, Inc. – which acted

7    as guarantor of the obligations of its subsidiaries Banque and AIG-MF –  has its principal place of

8    business in New York.  *See* Compl. ¶ 9; Strauch Decl. Ex. A (ISDA Master Agreement, Exhibit A

9    thereto (General Guarantee of American International Group, Inc.); *id.* Exs. B-C at 1; *id.* Ex. E at

10    5.  "This fact alone is sufficient to establish a 'substantial relationship' between New York and

11    the parties as well as a 'reasonable basis' for a contractual provision requiring application of New

12    York law." *Hughes,* 120 Cal. App. 4th at 258 (citation omitted). *See also, e.g.*, *Consul Ltd.,* 802

13    F.2d at 1147 ("If one of the parties resides in the chosen state, the parties have a reasonable basis

14    for their choice.")  Indeed, even where (unlike here) no state's law is expressly selected, courts

15    find New York law a reasonable choice to govern complex commercial transactions involving

16    residents of different states or countries, because "New York is a leading center of banking,

17    commerce and insurance in the United States, and the law developed by its courts is generally

18    recognized and respected in such a light." *International Multifoods Corp. v. Commercial Union*

19    *Ins. Co.*, 98 F. Supp. 2d 498, 502 (S.D.N.Y. 2000).

20        Finally, this Court should apply New York law *including* New York's choice of law

21    doctrine and any applicable laws regarding limitation of actions. *See Hughes*, 120 Cal. App. 4th

22    at 259-265.  This Court accordingly should apply New York's so-called "borrowing statute," New

23    York Civil Practice Law and Rules ("CPLR") § 202.  CPLR § 202 provides that, for causes of

24    action accruing outside of New York, claims will be subject to the *shorter* of the applicable

25    statute of limitation of (1) New York, *or* (2) of the state where the cause of action accrued. *See*

26    CPLR § 202.  Assuming *arguendo* that Plaintiff has pled any valid claims, they all accrued in

27    California. *See, e.g.*, Compl. ¶¶ 4-10, 12, 14, 17, 26, 30, 35, 38.  Thus, the shorter of New York's

28    or California's limitations period applies to each of Plaintiff's claims and bars them.

**B.      The Fraud Cause Of Action Is Time-Barred.**

California's statute of limitations for fraud is three years from "the discovery, by the aggrieved party, of the facts constituting the fraud . . . ." Cal. C.C.P. § 338(d); *see also, e.g.*, *River Colony Estates Gen. P'ship. v. Bayview Fin. Trading Group, Inc.*, 287 F. Supp. 2d 1213, 1221 (S.D. Cal. 2003).[6]  The statute begins to run when "one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Von Brimer v. Whirlpool Corp.,* 536 F.2d 838, 848 (9th Cir. 1976) (quoting *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 437 (1945)).  "'[W]hen [the] knowledge had by or imputed to plaintiff is such as to compel the conclusion that a prudent man would have suspected the fraud, the court may determine as a matter of law that there has been 'discovery.'" *Von Brimer,* 536 F.2d at 848 (quoting *Helfer v. Hubert*, 208 Cal. App. 2d 22, 26-27 (1962)).

The fraud claim is time-barred.  The allegations of the Complaint, as well as the public record of Plaintiff's pending Tax Court Action (commenced in summer 2004), show that Plaintiff was at least on inquiry notice of the alleged fraud significantly before July 8, 2004.  Plaintiff alleges that his "tax returns have since been audited by the IRS, with the IRS taking the position that losses from the Son of BOSS facility are not allowable for tax purposes" (Compl. ¶ 26), but he conveniently omits to allege exactly *when* he was audited by the IRS, or *when* the IRS notified him that it would disallow the claimed losses.  However, Plaintiff was on full notice of the IRS's challenge to the transactions well prior to July 8, 2004, when Plaintiff responded to the IRS's audit by commencing a proceeding in United States Tax Court.  *See* RJN Ex. 1.  Plaintiff's Petition reflects his actual knowledge of the IRS' challenge to the transaction and the basis for the alleged fraud, and furthermore attaches the IRS' written notice, dated *April 13, 2004*, stating the IRS's determination to disallow the claimed tax benefits.  *See* RJN Ex. 1, Exhibit A thereto,

---

[6]    New York's limitations period for fraud is the longer of six years from accrual or two years from discovery.  *See* NY CPLR § 213(8).  California's statute is the potentially shorter period in application here and thus applies, *see supra* p. 10.  However, even were New York law to apply, Plaintiff's fraud claim is time-barred.  AIG's last involvement in any aspect of the challenged transaction took place in 2000, and Plaintiff was clearly on notice of the alleged fraud no later than summer 2004, when he commenced his Tax Court Proceeding.  Thus, Plaintiff's claim should have been asserted, at latest, by 2006.

1   "Notice of Final Partnership Administrative Adjustment."  Plaintiff cannot claim that he was not

2   on notice of the IRS's challenge to his transaction, and therefore the entire basis of his fraud

3   claim, at the very latest by the time he commenced his action in Tax Court.  As that date is more

4   than three years before Plaintiff filed the Complaint, the fraud claim is time-barred.

5       *McKeown v. First Interstate Bank*, 194 Cal. App. 3d 1225 (1987) is directly on point.  In

6   *McKeown*, plaintiffs entered into a loan transaction with a bank.  The IRS audited plaintiffs' tax

7   returns for the years relevant to the transactions, and subsequently provided a notice of deficiency

8   to plaintiffs.  Plaintiffs commenced a proceeding in U.S. Tax Court to challenge the IRS's

9   position, but ultimately lost.  Plaintiffs then asserted claims for *inter alia* fraud, breach of

10  fiduciary duty, and negligence, alleging that the bank had wrongfully induced them to enter into

11  the transaction by representing that plaintiffs would not suffer any tax liability.  *See McKeown*,

12  194 Cal. App. at 1228.

13      The *McKeown* Court held that all of plaintiffs' claims were time-barred, concluding that

14  the relevant statutes of limitation ran from when plaintiff knew or should have known the

15  essential facts underlying the claim, and when plaintiffs suffered appreciable and actual harm.

16  *Id*. at 1229.  "*[N]otification of the tax deficiency* . . . constituted harm sufficient to trigger the

17  running of the statute. . . .  The taxpayer to whom a notice of deficiency is sent is put to the choice

18  of paying the deficiency, incurring the expense of petitioning for redetermination, or facing

19  collection by the government.  Appellants had at that point suffered appreciable harm."  *Id*.

20  (emphasis added).  Furthermore, the *McKeown* plaintiffs paid attorneys' fees in January 1977 for

21  representation in the tax court proceeding which meant that they "therefore suffered appreciable

22  harm at least as early as January 1977."  *Id*.  Finally, the court rejected the argument that the

23  claims did not accrue until the Tax Court rendered a final determination upholding the IRS's

24  challenge to their tax position.  *See id*. at 1231-32.

25      Based on *McKeown*, Plaintiff was put on notice of his potential claim no later than when

26  he received the IRS's deficiency notice – *i.e.*, in April 2004, even *before* he filed the Tax Court

27  action in July 2004:

28          'Focusing attention on the date . . . when the appellant received the

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

> notice of the tax deficiency . . . from the Appellate Division of the
> Internal Revenue Service, we are of the opinion that any reasonable
> and prudent man, being in the place of the appellants, would have
> known or certainly should have known at that time, that he had
> sustained legal harm as of that date, if not before.  The appellants
> . . . had known for over three and a half years that the Internal
> Revenue Service disagreed with their position.  Certainly, when
> they received notice of the tax deficiency assessment . . . it became
> necessary for them to incur the expense of retaining legal counsel.'

6   *Id*. at 1230 (quoting *Feldman* v. *Granger* 255 Md. 288, 296-297, 257 A.2d 421, 425 (1969)).

7   Moreover, the Complaint alleges that "*[p]rior to the time that the Son of BOSS was*

8   *promoted to Plaintiff*, the IRS had issued Notice 1999-59, published December 27, 1999, entitled

9   'Tax Avoidance Using Distributions of Encumbered Property,'" which warned of certain

10  transactions being marketed to taxpayers that consistent of "a contrived series of steps" that

11  created "artificial losses."  Compl. ¶ 21 (emphasis added).  It further alleges that "[o]n September

12  5, 2000, the IRS published Notice 2000-44, entitled 'Tax Avoidance Using Artificially High

13  Basis,' addressing similar transactions to Notice 1999-59 and warning that the IRS would not

14  allow deductions from transactions "designed to produce noneconomic tax losses by artificially

15  overstating basis."  *Id*. ¶ 22.  According to Plaintiff, "[a]s a result of IRS Notices 1999-59 and

16  2000-44, defendants knew and/or had reason to know that the Son of BOSS transaction was not a

17  legitimate or legal means for declaring capital losses for income tax purposes for Plaintiff."

18  *Id*. ¶ 23.  However, if Defendants were put on notice as to potential IRS challenge to the

19  transactions by *public records*, then Plaintiff was also.  *See, e.g*., *Cumming v. City of San*

20  *Bernardino Redevelopment Agency*, 101 Cal. App. 4th 1229, 1235 (4th Dist. 2002); *Community*

21  *Cause v. Boatwright*, 124 Cal. App. 3d 888, 901 (1st Dist 1981). **[7]**

22  **C.    The Unjust Enrichment Cause Of Action Is Untimely.**

23  Under California law, unjust enrichment and quasi-contract claims are subject to a two-

24  year statute of limitations.  *See* Cal. C.C.P. § 339(1); *see also, e.g., Roots Ready Made Garments*

25  *v. Gap Inc.*, No. C 07-03363 CRB, 2007 U.S. Dist. LEXIS 81108, at *12 (N.D. Cal. Oct.18,

26

27  [7]   In addition, Plaintiff alleges that, in February 2001, Sidley provided him with an "opinion

28  letter[]" that expressly brought IRS Notice 2000-44 to his attention.  *See* Compl. ¶¶ 16, 24.

2007).[8]  The statute of limitations for quasi-contractual claims begins to run immediately upon performance of the service at issue.  *See* 3 Witkin, *Cal. Proc. 4th*, Actions, § 508 (1996) ("When services are performed at the request of another without a contract, the duty implied by law to pay for them arises immediately on performance.  Hence the statute begins to run, and the plaintiff may recover only for the value of services rendered within 2 years before the suit is filed.")

Any alleged breach of some implied agreement to "provide Plaintiff with a legitimate business investment with lawful tax benefits" (Compl. ¶ 34), or any performance by Plaintiff, *i.e.*, payment of fees, occurred upon execution of the ISDA Master Agreements and Confirms, *i.e.* at latest on June 14, 2000, when the Basket Options expired and were settled.  Plaintiff does not specifically allege the date upon which the Trusts and LLC entered into the agreements with Banque and/or allegedly paid fees, but does allege that the transactions were "[]presented" to him in 2000, and must have been reflected on Plaintiff's tax returns for the year 2000, which the IRS challenged.  *See* Compl. ¶¶ 12, 26.  Any alleged performance under, or breach of, an implied agreement must have occurred in 2000, far more than two years before the Complaint was filed.

**D.    The UCL Claim Is Time-Barred.**

The New York statute of limitation applicable to statutory causes of action, including the statutory unfair competition claim,[9] is three years from injury by the allegedly deceptive act or practice.  *See* NY CPLR § 214(2) (three year statute of limitations for claims under statute); *Wender v. Gilberg Agency*, 276 A.D.2d 311, 312, 716 N.Y.S.2d 40 (1st Dep't 2000).[10]  Again,

---

[8]    New York's limitations period for claims under contract, express or implied, is six years, s*ee* NY CPLR § 213(2), and therefore California's shorter statute applies, *see supra* pp. 10 and 11 n.6.  However, even were New York's statute of limitations to apply, the result would be the same, since any action brought after 2006 would be untimely.

[9]    As noted, *infra* Point IV, Plaintiff's unfair competition claim should have been brought under analogous New York law (*i.e.*, N.Y. General Business Law § 349) *and* is subject to the shorter of New York's or California's applicable statute of limitation.

[10]    California's limitations period for §17200 Unfair Competition Law claims is four years from the time the claim accrued.  *See* Cal. Bus. & Prof. Code § 17208.  Because the transactions were completed in 2000, even were California law to apply to this cause of action, it would be time-barred.

1  according to the Complaint, the transactions were complete in 2000, and the fees he alleges he

2  paid Defendants in connection with the agreements – which he alleges as injury – well before

3  2004.  Therefore, the UCL claim (or any potential claim under New York unfair competition law)

4  is time-barred.

5  **II.**

6  **PLAINTIFF FAILS TO ALLEGE ANY FALSE STATEMENT BY ANY**
   **OF THE DEFENDANTS OR ANY DUTY TO DISCLOSE AND FAILS TO**
7  **PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(B)**

8  **A.    No Statements Are Attributed To Any Defendant.**

9        Plaintiff's fraud claim fails for the simple reason that the Complaint *does not identify a*

10 *single affirmative statement* – false or otherwise – made by any Defendant.  *See supra* pp. 6-8.

11 With no alleged misrepresentation (and no possible allegation of reliance on any statement), there

12 is no fraud claim.  *See, e.g., McNamara v. City of New York*, No. 05 CV 6026 (SJ) (RML), 2007

13 U.S. Dist. LEXIS 25015, at *9-11 (E.D.N.Y. Mar. 30, 2007) (dismissing fraud claim where

14 "complaint fails to set forth the specific fraudulent acts, statements, or omissions made by

15 Defendants . . . [and] sets forth only general or conclusory allegations that fraudulent statements

16 were made"); *Hughes v. BCI Int'l Holdings*, No. 05 Civ. 9085 (HB), 2007 U.S. Dist. LEXIS

17 21666, at *11 (S.D.N.Y. Mar. 27, 2007) (dismissing cross-claim for fraud that "fails to identify

18 . . . specific misrepresentations made"); *Fagan v. First Sec. Invs., Inc.*, No. 04 Civ. 1021 (LTS)

19 (THK), 2006 U.S. Dist. LEXIS 66065, at *18-19 (S.D.N.Y. Sept. 15, 2006); *J.A.O. Acquisition*

20 *Corp. v. Stavitsky*, 18 A.D.3d 389, 391, 795 N.Y.S.2d 569, 571 (1st Dep't 2005).

21 **B.    The Complaint Fails To Meet The Standards of Fed. R. Civ. P.  9(b).**

22       In addition, Federal Rule of Civil Procedure 9(b) requires Plaintiff to plead the details of

23 the alleged fraud with specificity.  *See, e.g., Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175

24 (2d Cir. 1993); *see also, e.g.*, *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ.

25 3494 (DLC), 2007 U.S. Dist. LEXIS 51081, at *11 (S.D.N.Y. July 17, 2007).  Thus, in order to

26 plead a claim of fraud based on affirmative misrepresentations, Plaintiff must "'(1) specify the

27 statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and

28 when the statements were made, and (4) explain why the statements were fraudulent.'"

1  *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 533 (S.D.N.Y. 2007) (quoting *Mills*, 12 F.3d

2  1170, 1175 (2d. Cir. 1993)).  *See also Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1305

3  (S.D. Cal. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (plaintiff alleging

4  fraud must plead the "'who, what, when, [and] where'" of the alleged fraud in order to state a

5  claim); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107-08 (9th Cir. 2003).  Because the

6  Complaint lacks *any* allegations of affirmative statements by any Defendant, and lacks any other

7  *specific, factual allegations* of fraud, the Complaint clearly fails to allege fraud as required by

8  Rule 9(b).

9        In addition, conclusory allegations of fraud – with which the Complaint is filled, *see, e.g.*,

10  Compl. ¶¶ 12, 14, 15, 16, 19, 20, 23, 28, 29, 31, – will not support a claim under Rule 9(b).  *See,*

11  *e.g., Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir. 1971); *Moore v. Kayport*

12  *Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Furthermore, allegations made "on

13  information and belief," *e.g.*, Complaint ¶¶ 6, 12, 14, 16, 17, 26, are ordinarily insufficient to

14  support a fraud claim under Rule 9(b).  *See, e.g., Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997,

15  1003 (2d Cir. 1988) ("[F]raud pleadings generally cannot be based on information and belief");

16  *Moore,* 885 F.2d 531 at 540 ("[A]llegations of fraud based on information and belief usually do

17  not satisfy the particularity requirements under Rule 9(b)").

18        Finally, Rule 9(b) "is not satisfied where the complaint vaguely attributes the alleged

19  fraudulent statements to "defendants.'"  *Mills,* 12 F.3d at 1175; *compare, e.g.,* Compl. ¶¶ 15

20  ("defendants failed to register plaintiff's Son of BOSS transaction as a tax shelter"); *and id.* ¶ 23

21  ("defendants failed to inform Plaintiff of the illegality of the Son of BOSS tax shelter scheme").

22  Plaintiff must *specifically* link alleged statements to *individual* Defendants; his complete failure

23  to do so is fatal to the fraud claim.  *See Mills*, 12 F3d at 1175; *see also, e.g*., *DiVittorio v.*

24  *Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1249 (2d Cir. 1987); *Hokama v. E.F. Hutton &*

25  *Co.,* 566 F. Supp. 636, 645 (C.D. Cal. 1983).

26  **C.      The Contractual Disclaimers Bar The Fraud Claim.**

27        Furthermore, Plaintiff *cannot* state any claim based on alleged representations expressly

28  disclaimed in the ISDA Master Agreements.  One New York court has already reached this

1    conclusion regarding the exact same allegations and ISDA Master Agreements at issue here: "In

2    this case, the disclaimer provisions of the [ISDA Master Agreements] sufficiently track the

3    substance of the alleged misrepresentations, negate, and provide a complete defense to any claims

4    that require a finding of representations, reliance or fiduciary duty." *Conwill v. Arthur Andersen

5    LLP*, 12 Misc. 3d 1171A, 2006 N.Y. Misc. LEXIS 1527, at *12-13 (June 21, 2006) (internal

6    quotation omitted). *See also, e.g., Harsco Corp. v Segui*, 91 F.3d 337, 345-46 (2d Cir. 1996)

7    (fraud claim properly dismissed: where contracting party had disclaimed representations outside

8    contract, party could not claim reliance on such alleged representations); *Echostar DBS Corp. v.

9    Gemstar-TV Guide Int'l, Inc.,* No. 05 Civ. 8510 (DAB), 2007 U.S. Dist. LEXIS 11346, at *11

10   (S.D.N.Y. Feb. 8, 2007) ("if the allegations of a complaint are contradicted by documents

11   incorporated in the complaint, the documents control and the court need not accept the allegations

12   of the complaint as true").

13        In *Conwill*, the plaintiff alleged that he was approached by Arthur Andersen with a

14   transaction that would supposedly provide a significant tax advantage.  The transaction involved

15   plaintiff entering into option transactions with Sumitomo Bank, and assigning the options to

16   another entity, and then claiming a tax loss.  Despite alleged representations and legal opinions

17   promising tax benefits, plaintiff's tax treatment of the transaction was later challenged by the

18   IRS.[11]  Plaintiff sued Andersen and the other parties to the transaction, including Sumitomo,

19   alleging that defendants had fraudulently induced him to enter in to the transactions.  *See Conwill*,

20   2006 N.Y. Misc. LEXIS 1527, at *1-7.

21        However, as part of the transaction, the parties executed an assignment and assumption

22   agreement in which the plaintiff represented among other things that the parties thereto "*were not

23   acting as his fiduciaries with respect to either the FX Option Agreements or with respect to his

24   decision to enter into*" the agreement itself.  *Id.*, at *6 (emphasis added).  On this basis, the court

25   dismissed plaintiff's claims against Sumitomo for, *inter alia*, breach of fiduciary duty, fraud in

26

27   _____

     [11]   Although not expressly so named in *Conwill*, the transaction as described therein was also a
28   so-called "Son of BOSS" transaction.

1  the inducement, negligent misrepresentation and professional malpractice, breach of contract to

2  provide tax and investment advisory services, and civil conspiracy. *Id.,* at *12-13. The same

3  result should apply here.

4  **D.    Plaintiff Does Not And Cannot Allege Any Duty To Disclose, And Thus Has No**
   **Claim Based On Omissions.**

5

6  A plaintiff alleging fraud by concealment must specify "'(1) what the omissions were; (2)

7  the person responsible for the failure to disclose; (3) the context of the omissions and the manner

8  in which they misled the plaintiff; and (4) what defendant obtained through the fraud.'"

9  *Abbatiello,* 522 F. Supp. 2d at 533 (quoting *Malmsteen v. Berdon, LLP,* 477 F. Supp. 2d 655,

10  664-65 (S.D.N.Y. 2007)). Plaintiff fails to do so, and the fraud claim fails on this basis as well.

11  Equally important, "a concealment of facts supports a cause of action for fraud only if the

12  non-disclosing party has a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam*

13  *Bank, N.V.,* 68 F.3d 1478, 1483 (2d Cir. 1995). *See also, e.g., Melville v. Kennedy,* 18 Cal. 3d

14  335, 346-7 (1976)("[b]eing grounded solely on omissions, the validity of the present count

15  depends on allegations that would establish some duty to disclose on the part of defendant").

16  "[A]n arm's length transaction with a large financial institution acting as the counterparty on an

17  option transaction, will not generally give rise to a fiduciary duty unless one is created by

18  agreement." *Conwill,* N.Y. Misc. LEXIS 1527, at *12-13 (citing *Enron Corp. v Bank of Amer.,*

19  292 B.R. 752 (Bankr. S.D.N.Y. 2003)). Indeed, in an arms-length commercial transaction such as

20  the one at issue, "no … fiduciary relationship will arise absent extraordinary circumstances." *Id.*

21  (citing *CIBC Bank & Trust Co. [Cayman] Ltd. v. Credit Lyonnais,* 270 A.D.2d 138, 139, 704

22  N.Y.S.2d 574 (1st Dep't 2000)).

23  Based on the express contractual disclaimers present here, *see supra* pp. 4-5, 8 n.5,

24  Plaintiff cannot allege that any Defendant was his advisor or fiduciary and therefore had a duty to

25  disclose any of the allegedly concealed facts. *See* Strauch Decl. Ex. A (ISDA Master Agreement,

26  Schedule, §5(f)(v), (vi)). Under New York law, "[w]here no fiduciary duty is implied by law,

27  contractual disclaimers may be given effect, and enforced in accordance with their terms." *Id.*

28  (citing *Seippel v. Jenkens & Gilchrist, PC,* 341 F. Supp. 2d 363, 381-82 (S.D.N.Y. 2004)

1    (contractual disclaimers of fiduciary duty are effective under New York law)); *see also Asian*

2    *Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ.*, 944 F. Supp. 1169, 1178 (S.D.N.Y.

3    1996) (contractual disclaimer will be given effect under New York law).[12]

4    **E.    The Written Contracts Demonstrate That Allegedly "Concealed" Facts Were**
       **Actually Expressly Disclosed.**

5

6         At least two of Plaintiff's allegations, already inadequate to support his fraud claim, are

7    contradicted by the representations made by the Trusts and LLC in the ISDA Master Agreements,

8    including the agreement Plaintiff executed on behalf of the LLC.

9         First, Plaintiff asserts that AIG "paid fees in the form of 'kick-back' referrals to Arthur

10   Andersen, which compromised AIG's role as a neutral broker *and was concealed from Plaintiff*."

11   Compl. ¶ 13 (emphasis added), *see also id.* ¶¶ 17 ("*defendants' documentation . . . materially*

12   *omitt[ed] any mention of kick-back fees.*") (emphasis added).[13]    Second, Plaintiff claims that

13   Defendants concealed the fact that the transaction structure was "mass marketed" (and/or was

14   marketed to "at least approximately six other clients from Arthur Andersen's office" (Compl. ¶

15   14) and was not "unique or customized" to him alone.  *See* Compl. ¶¶ 14, 16, 28.

16        However, the Trusts and LLC expressly represented in the ISDA Master Agreements that

17   they "*acknowledge[] that [Banque] has paid a fee to Arthur Andersen LLP for its assistance in*

18   *arranging the Transaction.*"  *See supra* p. 5; Strauch Decl. Ex. A (ISDA Master Agreement,

19   Schedule, §5(f)(viii) (emphasis added)).  The Trusts and LLC were also aware that Banque

20   "*ha[d] paid fees to Arthur Andersen for arranging similar transactions in the past and [might] do*

21

22   [12]    The result is the same under California law.  *See, e.g.*, *Resolution Trust Corp. v. BVS Dev.*,
         *Inc.*, 42 F.3d 1206, 1214-15 (9th Cir. 1994).

23

24   [13]    Plaintiff appears to allege *both* that Defendants *paid* a fee to Arthur Andersen, and *received* a
         fee from Arthur Andersen and/or some other undefined party.  *Compare* Compl. ¶ 13, quoted
25   *supra*, and *id.* ¶ 28 (Defendants allegedly "conceal[ed] the kick-back fees *paid by* Arthur
         Andersen and/or others to induce defendants to participate in the transaction.")  Setting aside the
26   fact that Defendants did not receive any such fees, Plaintiff has not alleged that any individual
         Defendant actually received any fee, alleged any duty on the part of any Defendant to disclose
27   such a fee if it had received one, or alleged why such a fee, or its supposed concealment, would
         support a claim of fraud.

28

1  *so again in connection with future transactions.*" *Id.*  In light of these written disclosures,

2  Plaintiff could not reasonably believe that his transactions were "unique" to him, and/or were not

3  available to anyone else (in particular, to other Andersen clients, *see* Compl. ¶¶ 14, 28).  *See, e.g.,*

4  *Matusovsky v. Merrill Lynch,* 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("allegations . . .

5  contradicted by . . . a document [referenced in the complaint] are insufficient to defeat a motion to

6  dismiss"); *Rapoport v. Asia Elecs. Holding Co.,* 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000)

7  (granting motion to dismiss where "documents [referenced but not attached to complaint]

8  contradict Plaintiff's allegations.").[14]

9  **III.**

10  **PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE**
   **THE RELATIONSHIP IS GOVERNED BY CONTRACT**

11

12  Under New York law, "[t]he existence of a valid and enforceable written contract

13  governing a particular subject matter ordinarily precludes recovery in quasi contract for events

14  arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v Long Island R. R. Co.*, 70

15  N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987) (internal citations omitted).  The same is true in

16  California.  *See, e.g., Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004)

17  ("An action based on quasi-contract cannot lie where a valid express contract covering the same

18  subject matter exists between the parties") (citations omitted).  Plaintiff does not have any legal

19  right to elect to assert a quasi-contract claim when his rights and obligations are governed by

20  agreements with AIG.  *See, e.g., In re Chateaugay Corp.,* 10 F.3d 944, 958 (2d Cir. 1993);

21  *Florida ex. rel. Butterworth v. Exxon Corp.,* 109 F.3d 602, 612-13 (9th Cir. 1997).

22  Plaintiff makes a cursory attempt to avoid the effect of the agreements by alleging that

23  they were "void for illegality."  *See* Compl. ¶ 17.  This contention fails.

24  *First*, as shown in Point II, *supra*, Plaintiff has not adequately pled a cause of action for

25  fraud and thus has no basis to avoid the agreements on that ground.

26  _____

27  [14]  California law is in accord.  *See, e.g.*, *Casa Herrera, Inc. v. Beydoun,* 32 Cal. 4th 336, 346
   (2004) (California courts "have consistently rejected promissory fraud claims premised on prior

28  or contemporaneous statements at variance with the terms of a written integrated agreement.")

1    *Second*, Plaintiff argues that the "illegal purpose" of the agreements was supposedly to

2    "induce[] Plaintiff to enter into a fraudulent strategy that defendants designed to avoid the

3    payment of lawfully due taxes." *Id*.  Again, no fraud of any kind is properly alleged, and this

4    position is directly contrary to the position Plaintiff has taken in his Tax Court case, where he

5    claims that the purpose of the transactions was to "install a hedge, which would allow [Plaintiff],

6    for a reasonable cost, to hedge against a total meltdown in value [of its investments]. . . .  The

7    Thieriot family believed that in entering into the transactions that they had a reasonable

8    opportunity to earn a profit, in excess of all fees and transaction costs from the transactions

9    without regard to tax benefits, and also to hedge against a collapse in the value of the Thieriot

10   family assets."  RJN Ex. 1 at 6(j)-(k).  Plaintiff cannot have his cake and eat it too:  if he contends

11   before the Tax Court that the purpose of the transaction was to make a profit and hedge against

12   loss, he cannot argue before this Court that the purpose was, in fact, to avoid paying lawfully due

13   taxes.

14   *Third*, Plaintiff does not and could not allege that buying and selling options, or

15   purchasing notes, or pledging notes as collateral, the only steps of the transactions in which AIG

16   was involved, are "illegal" activities that would render the agreements void.  To the contrary, in

17   the Tax Court Action, Plaintiff takes the position that the transactions were "bona fide business

18   transactions," not improper tax shelters, and that the transactions had economic substance and

19   were entered into in good faith with intent to make a profit and hedge against market risk.  *See*

20   RJN Ex. 1 at ¶¶5(j)(k)(l)(n), 6(j)(k)(l).

21   *Fourth*, the Complaint contains no factual allegations supporting the conclusory assertion

22   that *Defendants* entered into the agreements with the "illegal purpose" of seeking to help Plaintiff

23   avoid taxes that were legally due.  And Plaintiff does not identify any provision in any of the

24   agreements that enables or obligates *any* party to avoid paying legally owed taxes because no

25   such provision exists.

26   *Fifth*, Plaintiff cannot obtain recovery on an equitable cause of action such as unjust

27   enrichment if *he entered into an illegal contract for the purpose of committing tax fraud*.  The

28   Trusts and LLC expressly represented that *they* were "*solely responsible for [their] trading or*

1  *investment decisions,*" had *upon careful review with their advisors* "*determined that entering into*

2  *this Agreement and each transaction hereunder is consistent with [their] objectives*," and were

3  "*solely responsible for determining and evaluating [the] consequences and making [their] own*

4  *independent decisions with respect to such transactions*."  *See supra* pp. 4-5.  Plaintiff thus

5  expressly disclaimed any advice from AIG as to tax, legal or financial aspects of the transactions,

6  *see supra* Point II.C; Strauch Decl. Ex. A (ISDA Master Agreement, Schedule, §5(f)(vi)).

7  Moreover, Plaintiff provides no factual allegations that AIG gave him tax advice, assisted him in

8  preparing or filing his 2000 tax return, advised him to claim any tax losses, or even told him that

9  tax losses *could* be claimed in connection with the transactions.  To the extent Plaintiff claims that

10  the purpose of the agreements was to provide him with illegal tax benefits (which as

11  demonstrated above is contradicted by the agreements themselves and by Plaintiff's pleadings

12  before the Tax Court), the equitable relief he seeks is precluded by the doctrine of *in pari delicto*.

13  *See, e.g., Harriman v. Northern Sec. Co.*, 197 U.S. 244, 295-96 (1905) ("[P]roperty delivered

14  under an illegal contract cannot be recovered back by any party *in pari delicto*. . . . )

15                                                    **IV.**

16            **THE CALIFORNIA UNFAIR BUSINESS PRACTICES LAW ("UCL")**
                                    **DOES NOT APPLY**

17        The New York choice of law provision in the ISDA Master Agreements (and Confirms,

18  Pledge Agreements, Notes, etc.) requires that any claim for "unfair business practices" be brought

19  under *New York unfair competition law*, not the California UCL.  "A valid choice-of-law

20  provision selecting another state's law is grounds to dismiss a claim under California's UCL."

21  *Continental Airlines Inc. v. Mundo Travel Corp.,* 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006)

22  (holding that Virginia's unfair competition law applied, that under Virginia law unfair

23  competition was defined as palming off goods as those of another, and dismissing claim for

24  failing to allege any "palming off."); *see also Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp.

25  2d 842, 62 (N.D. Cal. 2000) (Henderson, J.) (contractual provision selecting New Jersey law for

26  "construction, interpretation and performance" of agreement required dismissal of UCL claim).

27  Plaintiff has not alleged any claim under New York unfair competition law.

28

1

**V.**

2

**PLAINTIFF HAS WAIVED HIS RIGHT TO JURY TRIAL**

3   Plaintiff cannot demand a jury trial because the Trusts and LLC expressly waived that

4   right in their respective ISDA Master Agreements.  *See supra* p. 6, Strauch Decl. Ex. A (ISDA

5   Master Agreement, Schedule §4(k)).  The Court accordingly should strike the jury request.  *See*

6   *generally Okura & Co. (Am.) v. Careau Group*, 783 F. Supp. 482, 488-91, 506 (C.D. Cal. 1991)

7   (discussing validity and scope of jury waiver provisions in financing agreements and holding that

8   motion to strike jury demand as to most causes of action was properly granted).

9

**CONCLUSION**

10   The Complaint should be dismissed in its entirety and with prejudice as against all

11   Defendants.

12

Dated: February 6, 2008

13                                           NICOLLE L. JACOBY
                                            OLIVIER P. STRAUCH
14                                           H. JOSEPH ESCHER III
                                            FRANCE JAFFE
15                                           DECHERT LLP

16

17                                           By: _____/S/_____
                                                FRANCE JAFFE
18                                              Attorneys for Defendants
                                                AIG MATCHED FUNDING CORP.,
19                                              AIG FINANCIAL SECURITIES CORP.,
                                                AIG FINANCIAL PRODUCTS CORP.,
20                                              AMERICAN INTERNATIONAL
                                                GROUP, INC., and BANQUE AIG

21

22

23

24

25

26

27

28

Dechert LLP
Attorneys At Law
San Francisco

23