1  LUKENS LAW GROUP
   WILLIAM M. LUKENS (SBN 037196)
2  JENNIFER L. JONAK (SBN 191323)
   One Maritime Plaza, Suite 1600
3  San Francisco, CA 94111
   Telephone: (415) 433-3000
4  Facsimile: (415) 781-1034

5  Attorneys for Plaintiff

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10  RICHARD T. THIERIOT, an individual;        Case No.  C-07-5069 JW

11          Plaintiff,                         **OPPOSITION TO AIG
                                               DEFENDANTS' MOTION TO
            v.                                 DISMISS AND STRIKE**
12
   AIG MATCHED FUNDING CORP., a
13  corporation; AIG FINANCIAL SECURITIES
   CORP., a corporation; AIG FINANCIAL        Date:  April 7, 2008
14  PRODUCTS CORP., a corporation; BANQUE      Time:  9:00 a.m.
   AIG, a corporation; and DOES ONE THROUGH    Dept.:  Courtroom 8, 4th Floor
15  THIRTY, inclusive;                         Judge:  The Hon. James Ware

16          Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

*Lukens Law Group*
*One Maritime Plaza, Suite 1600*
*San Francisco, CA 94111*

# TABLE OF CONTENTS

I.      INTRODUCTION………………………………………………………1

II.     ARGUMENT………………………………………………..………..2

        A.      Legal Standard………………………………………………..……2

        B.      Plaintiff's Fraud Claim Is Not Time Barred ………………………………3

                1.      Choice of Law Analysis…………………………….…………..3

                2.      Neither the IRS Notices Nor the Tax Court Proceeding
                        Triggered the Running of the Statute of Limitations on
                        Plaintiff's Fraud Claim………………………………….………5

        C.      Plaintiff's Fraud Claim Meets the Pleading Standard of Rule 9(b)………14

        D.      AIG's Boilerplate Disclaimers Do Not Preclude Plaintiff's
                Fraud Claim………………………………………………………….………17

        E.      The Alleged Omissions by AIG Support a Claim of Fraud………………19

        F.      Plaintiff Has Properly Pled a Claim for Unjust Enrichment………...………20

        G.      Plaintiff Has A Viable Unfair Business Practices Claim…………………22

        H.      Plaintiff Is Entitled to a Jury Trial…………………………………..……24

III.    CONCLUSION………………………………………...……………………25

# TABLE OF AUTHORITIES

## CASES

*131 Main Street Associates v. Manko,*
   897 F.Supp. 1507 (S.D.N.Y. 1995) ………...…………………………………..8, 11-12

*Agair Inc. v. Shaefferi,*
   232 Cal. App. 2d 513 (1965) ……………………………………..…….…..21

*Averbach v. Vnescheconombank,*
   280 F.Supp. 2d 945 (N.D. Cal. 2003) ……………………………….………..5-6

*Bassidji v. Goe,*
   413 F.3d 928 (9th Cir. 2005) ……………………………………………………..24

*Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank,*
   57 F.3d 146 (2d Cir.1995)……………………………………………………19-20

*Bennett v. Hibernia Bank,*
   47 Cal.2d 540 (1956)…………………………………………………….……..7

*Bharucha v. Reuters Holdings PLC,*
   810 F. Supp. 37 (E.D.N.Y. 1993)…………………………………………..15

*Caiola v. Citibank, N.A.,*
   295 F.3d 312 (2d Cir. 2002)………………………………………………18

*Certilman v. Hardcastle, Ltd.,*
   754 F. Supp. 974 (E.D.N.Y. 1991)…………………………………..………..15

*Conley v. Gibson,*
   355 U.S. 41 (1957)…………………………………………….………………..2

*Conwill v. Arthur Andersen LLP,*
   12 Misc.3d 1171(A) (N.Y.Sup. 2006)…………………..……………………18

*Day & Zimmerman, Inc. v. Chaloner,*
   423 U.S. 3 (1975)………………………………………………………...…..3

*DeMarco v. Lehman Brothers, Inc.,*
   309 F.Supp.2d 631 (S.D.N.Y. 2004)………………………………………..8-9

*Dunkin v. Boskey,*
   82 Cal. App. 4th 171 (2000)…………………………………………….20

*Europadisk Holdings, LLC. v. Shelton,*
   2004 WL 613109 (S.D.N.Y. 2004)………………………………………18

*Fidelity Fin. Corp. v. Federal Home Loan Bank,*
   792 F.2d 1432 (9th Cir. 1986)……………………………...……………..2

*First Nationwide Savings v. Perry,*
   11 Cal. App. 4th 1657 (1992)………………………………………21

*Fox v. Ethicon Endo-Surgery, Inc.,*
    35 Cal. 4th 797 (2005)…………………………………………………………..9

*Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,*
    115 F.3d 1332 (7th Cir. 1997)……………………………………………13

*Gilligan v. Jamco Development Corp.,*
    108 F.3d 246 (9th Cir. 1997)……………………………………………..3

*Glue-Fold, Inc. v. Slautterback Corp.,*
    82 Cal. App. 4th 1018 (2000)…………………………...………………22
.
*Govt of India v. Cargill,*
    445 F. Supp. 714 (D.C.N.Y. 1978)……………………..…………………13

*Grafton Partners L.P. v. Superior Court,*
    36 Cal.4th 944 (2005)……………………………………...………24

*Grisham v. Philip Morris USA,*
    40 Cal. 4th 623 (2007)……………………………………..…………23

*Haskell v. Time, Inc.,*
    857 F. Supp. 1392 (E.D. Cal. 1994)……………………..…………………..2

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984)………………………………………………..2

*Hobbs v. Bateman Eichler, Hill Richards, Inc.,*
    164 Cal.App.3d 174 (1985)…………………………………...…………7

*Huskinson & Brown LLP v. Wolf,*
    32 Cal. 4th 453 (2004)……………………………………………21

*In re Evergreen Mut. Funds Fee Litigation,*
    423 F. Supp. 2d 249 (S.D.N.Y. 2006)……………………………………23

*In re J. Baranello & Sons, Inc.,*
    149 B.R. 19 (E.D.N.Y. 1992)…………………………………..………15

*In re Worldcom,*
    377 B.R. 77 (S.D.N.Y. 2007)…………………………………..…………13

*International Engine Parts, Inc. v. Feddersen & Co.,*
    9 Cal.4th 606 (1995)…………………………………………...……8

*Jenkins v. McKeithen,*
    395 U.S. 411 (1969)…………………………………………….....2

*Jolly v. Eli Lilly & Co.,*
    44 Cal.3d 1103 (1988)……………………………………………13

*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.,*
    285 F.3d 848 (9th Cir. 2002)…………………………………………23

*Katz v. Zuckerman*,
   481 N.Y.S.2d 271 (1984)……………………………………..……………21

*Kline v. Turner*,
   87 Cal.App.4th 1369 (2001)……………………………………………...13

*Kotlyarsky v. New York Post*,
   757 N.Y.S.2d 703 (2003)………………………………………..……………14

*Lazar v. Superior Court*,
   12 Cal. 4th 631 (1996) …………………………………………………20
….

*LC Capital Partners, L.P. v. Frontier Ins. Group*,
   318 F.3d 148 (2d Cir. 2003) …………………………………..…………..7

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) …………………………………………20

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) …………………………………………25

*M&T Mortg. Corp. v. Miller*,
   323 F. Supp. 2d 405 (E.D.N.Y. 2004) ……………………………………14, 23-24

*Massachusetts Mutual Life Ins. Co. v. Sup. Ct.*,
   97 Cal. App. 4th 1282 (2002) ………………………………………22-23

*Marks v. CDW Computer Centers, Inc.*,
   122 F.3d 363 (7th Cir. 1997) …………………………………..………..6

*McClain v. Octagon Plaza, LLC*,
   159 Cal.App.4th 784 (2008) …………………………………...……………………17

*McKeown v. First Interstate Bank*,
   94 Cal. App. 3d 1225 (1987) …………………………………………10-11

*Medical Instrument Development Laboratories v. Alcon Laboratories*,
   2005 WL 1926673 (N.D. Cal. 2005) …………………………..……………………..3, 22

*Medimatch, Inc. v. Lucent Technologies, Inc.*,
   120 F. Supp. 2d 842 (N.D. Cal. 2000) …………………………..…………………..3

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*,
   382 F.Supp.2d 411 (S.D.N.Y. 2003) …………………………………….…………18

*Mitschele v. Schultz*,
   36 A.D.3d 249 (2008) ………………………………………….……………10

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal.4th 459, 465 (1992) …………………………………...……………24

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
   6 Cal. 3d 176 (1971) …………………………………………...……………21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*NL Industries, Inc. v. Kaplan,*
   792 F.2d 896 (9th Cir. 1986) ……………………………………………………..2

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.,*
   157 Cal. App. 4th 835 (2007) …………………………………..…………….20

*Perrott v. U.S. Banking Corp.,*
   53 F. Supp. 953 (D.C. Del. 1944) ……………………………..…….…15

*Pointer v. Columbia Univ.,*
   1997 WL 86387 (S.D.N.Y. 1997)…………………………………………14

*Reznor v. J. Artist Management, Inc.,*
   365 F.Supp.2d 565 (S.D.N.Y. 2005) ……………………..…………….13

*Rodriguez v. Village of Islan Park, Inc.,*
   1991 WL 128568 (E.D.N.Y. 1991) …………………………………………23

*Ross v. A.H. Robins Co.,*
   607 F.2d 545 (2d Cir. 1979), *cert. denied,* 446 U.S. 946 (1980) …………………15

*San Bernadino County v. Sapp,*
   156 Cal. App. 2d 550 (1958) …………………………..…………………14

*SEC v. Management Dynamics, Inc.,*
   1973 WL 434 (S.D.N.Y. 1973) ……………………………..………….15

*Seippel v. Sidley, Austin, Brown & Wood LLP,*
   399 F.Supp.2d 283 (2005) ……………………………………….7

*Shannon v. Gordon,*
   249 A.D.2d 291 (1998) ……………………………………………..6

*Simmons v. Ratterree Land Co.,*
   217 Cal. 201 (1932) ……………………………………………17

*Snapp & Associates Ins. Services, Inc. v. Robertson,*
   96 Cal. App. 4th 884 (2002) …………………………………………23

*St. Paul Travelers Inc. Co. v. Nandi,*
   2007 WL 1662050 (N.Y. Sup. 2007) …………………………………………22

*Stambovsky v. Ackley,*
   169 A.D.2d 254 (1991) ……………………………………..…………19

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,*
   971 F.2d 401 (9th Cir. 1992) ………………………………….……………..3

*Tahini Investments, Ltd. v. Bobrowsky,*
   99 A.D.2d 489, 490 (1984) …………………………………………19

*Tello v. Dean Witter Reynolds Inc.,*
   410 F3d 1275 (11th Cir 2005) ………………………………..………………6

*Tijsseling v. General Acc. Assur. Corp.*,
    55 Cal. App. 3d 623 (1976) …………………………………..…………………..6

*Transit Rail, LLC v. Marsala*,
    2007 WL 2089273 (W.D.N.Y. 2007)………………………..…………………..18

*Tryforos v. Icarian Development Co., S.A.*,
    47 F.R.D. 191 (N.D. Ill. 1969) ……………………………………………..15

*Tucci v. Club Mediterranee, S.A.*,
    89 Cal. App. 4th 180 (2001) …………………………………………………4

*Victor Oil Co. v. Drum*, 184 Cal. 226 (1920) …………………………………14

*Waldman v. Englishtown Sportswear, Ltd.*,
    460 N.Y.S.2d 552 (1983) ……………………………………………………..21

## STATUTES AND REGULATIONS

Cal. Bus. & Prof. Code § 17200……………………………...…………………..3, 22

Cal. Civil Code § 339……………………………………………………………..21

Cal. Code Civ. Proc. § 338 …………………………...……………………..5, 21

Cal. Rev. & Tax. § 18407(a)(4) …………………………………………………..5

Cal. Rev. & Tax. § 18628…………………………………………………………..5

Cal. Rev. & Tax. § 18648 ………………………………………...………………..5

Cal. Rev. & Tax. § 19177 …………………………………………...……………..5

Cal. Rev. & Tax. § 19182 …………………………………………………..……..5

Cal. Rev. & Tax. § 19751 …………………………………………...……………..5

Cal. Rev. & Tax. § 19772 …………………………………………...……………..5

Cal. Rev. & Tax. § 19777 …………………………………………………………..5

Cal. Rev. & Tax. § 19777.5………………………………………………………..5

Cal. Rev. & Tax. § 19778 …………………………………………...……………..5

Fed. R. Civ. Pro. 9(b) …………………………………………………..……..14-16

N.Y. C.P.L.R. § 213……………………………………………………..……..5, 22

N.Y. General Business Law § 349……………………………….…………………22-23

1

## SECONDARY AUTHORITIES

2

Restatement (Second) of Conflict of Laws § 187…………………………………………...24

1 Witkin, Summary of Cal. Law, Contracts, § 304………………………………………17

5 Witkin, Summary of Cal. Law, Torts, § 676………………………...…………..20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **I.      INTRODUCTION**

2         In 2000, Plaintiff Richard Thieriot and his family were faced with the sale of the

3  family's longtime business, the San Francisco Chronicle.  Concerned about the volatility

4  of the market during this time period and its impact on the sale, Mr. Thieriot consulted

5  with his advisors at Arthur Andersen and purchased a transaction that was supposed to

6  hedge the family's assets against a large drop in value, as well as provide investment

7  potential and customized tax treatment.  Plaintiff was explicitly advised that his

8  transaction was unique to him and had been set up with his family's specific

9  circumstances in mind.  Plaintiff took every step possible to ensure that he was engaging

10 in something legitimate, obtaining a legal opinion from a recommended, nationally

11 recognized firm and following up with that firm after IRS notices were issued to make

12 sure that they did not apply to his transaction.  Unbeknownst to him, Plaintiff had been

13 sold an illegal Son of BOSS tax shelter that had been mass-marketed to numerous other

14 clients of Arthur Andersen and the AIG defendants ("AIG").  AIG's paperwork made the

15 transaction appear customized and as though it had investment potential, when in fact,

16 neither was true.  Plaintiff believed that AIG, who had significant discretionary control

17 over the hedge of his transaction, had been chosen because of their "reputation for

18 integrity and fairness."  Instead, AIG was chosen because it had a kickback referral

19 system for illegal tax shelters with Arthur Andersen and because it had helped create,

20 coordinate and promote the tax shelter at issue.  Plaintiff was never informed about AIG's

21 true role, instead believing that it was a neutral broker.  He was never told that the

22 transaction would not pass muster with the Internal Revenue Service ("IRS") and should

23 have been listed as a registered tax shelter.  He was also never told that the opinion letters

24 saying otherwise had been mass-generated to AIG's other tax shelter clients and was

25 simply "cover" for the tax shelters.

26        When the truth about AIG came out, Plaintiff timely filed this action.  AIG now

27 claims that he has acted too late – despite the fact that AIG concealed its role, claiming to

28 this day in its motion to dismiss that it was nothing more than a third party broker

1  unrelated to any wrongdoing that may have occurred.  AIG argues that Plaintiff should

2  have been on notice of its wrongdoing in 2004 when the IRS first indicated that it might

3  disallow his transaction, and when Plaintiff filed a Tax Court proceeding challenging any

4  disallowance.  Yet the Tax Court proceeding proves exactly the opposite – Plaintiff

5  believed that he had not been sold a tax shelter and was thereby defending the transaction.

6  Neither the IRS' documentation nor the Tax Court proceeding, nor any IRS Notices,

7  focused on AIG, which is not surprising, as Plaintiff believed it to have been a transaction

8  customized by Arthur Andersen.  It was not until very late in the tax proceedings in 2006

9  that he was informed as to AIG's role.  Even if Plaintiff had suspected wrongdoing prior

10 to this stage, which he did not, any possible suspicion would have simply been as to

11 negligence on Arthur Andersen's part, not fraud on the part of AIG.  A reasonable person

12 would not have been put on actual or constructive notice, and thus, the statute of

13 limitations was not triggered.  Based on this, AIG's motion to dismiss for statute of

14 limitations, which raises factual issues inappropriate for resolution at this stage, must be

15 denied.  AIG's other challenges to Plaintiff's causes of action are likewise without basis.

16 **II.    ARGUMENT**

17 　　**A.    Legal Standard**

18 　　　　A motion to dismiss will be denied unless it appears "to a certainty" that the

19 plaintiff would not be entitled to relief under any set of facts that could be proved.  *NL*

20 *Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986).  *See also Conley v. Gibson*,

21 355 U.S. 41, 45-46 (1957); *Fidelity Fin. Corp. v. Federal Home Loan Bank*, 792 F.2d

22 1432, 1435 (9th Cir. 1986).  In considering a motion to dismiss, the Court must treat all

23 material allegations in the complaint as true, construe the pleading in the light most

24 favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  *NL Industries,*

25 *Inc.*, 792 F.2d at 898; *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1396 (E.D. Cal. 1994)

26 (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).  "A court may dismiss a

27 complaint only if it is clear that no relief could be granted under any set of facts that could

28 be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73

1    (1984). Accordingly, a motion to dismiss for failure to state a claim is viewed with

2    disfavor and is rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249

3    (9th Cir. 1997).

4    **B.     Plaintiff's Fraud Claim Is Not Time Barred**

5    **1.     Choice of Law Analysis**

6         In suits based on diversity jurisdiction, courts apply the choice of law principles of

7    the forum state. *Day & Zimmerman, Inc. v. Chaloner*, 423 U.S. 3, 4 (1975). Since this

8    lawsuit was brought in the Northern District of California as a diversity case, California

9    law properly determines whether New York law should control the present dispute.

10   Under California law, a choice of law clause agreed upon through arm's length

11   negotiations by sophisticated commercial parties is generally enforced unless it is contrary

12   to California public policy. *Medimatch, Inc. v. Lucent Technologies, Inc.*, 120 F. Supp. 2d

13   842, 861-62 (N.D. Cal. 2000) (citation omitted). Setting aside whether this case involved

14   balanced and arm's length negotiations, the Ninth Circuit has rejected the application of

15   contractual choice of law provisions to claims arising in tort. *Sutter Home Winery, Inc. v.*

16   *Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) ("Claims arising in tort are not

17   ordinarily controlled by a contractual choice of law provision. Rather they are decided

18   according to the law of the forum state.") (citation omitted).

19        Therefore, unless a defendant's choice of law provision, as written, explicitly

20   applies to "all matters arising out of the Agreement," tort claims will be governed by

21   California law. *See Medical Instrument Development Laboratories v. Alcon Laboratories*,

22   2005 WL 1926673, *3 (N.D. Cal. 2005) (even where contract provided that Texas law

23   would govern interpretation and construction of the contract, choice of law provision did

24   not explicitly control non-contractual claims and plaintiff's fraud and section 17200

25   claims, which arose in tort, were therefore governed by California law) (emphasis in

26   original in quote).

27        Here, the choice of law provisions upon which AIG relies apply only to the

28   performance and construction of the agreements themselves. Declaration of Oliver P.

1   Strauch, Exs. A-F, ISDA Master Agreement ("This Agreement will be governed and

2   construed in accordance with [New York law]"); Master Agreement ("This Agreement

3   will be governed by and construed in accordance with New York law"); Note Purchase

4   Agreement ("This Agreement shall be governed by, and construed in accordance with, the

5   laws of the State of New York"); Note Purchase Agreement ("This Agreement shall be

6   governed by, and construed in accordance with, the laws of the State of New York

7   applicable to contracts made and to be enforced in such State"); Zero Coupon Notes

8   ("This Note shall be governed by, and construed in accordance with, the laws of the State

9   of New York applicable to contracts made and to be enforced in such State").  Just as in

10  the *Medical Instrument* case, these general choice of law provisions do not apply to claims

11  arising in tort, such as those asserted for fraud, unjust enrichment, and unfair business

12  practices against AIG.  *Id.*

13      California applies a choice of law analysis known as the "governmental interests

14  analysis" or simply the "interest test."  *See Tucci v. Club Mediterranee, S.A.*, 89 Cal. App.

15  4th 180, 189 (2001). "This governmental interest analysis involves three steps. (1) The

16  court determines whether the foreign law differs from that of the forum. (2)  If there is a

17  difference, the court examines each jurisdiction's interest in the application of its own law

18  to determine whether a true conflict exists. When both jurisdictions have a legitimate

19  interest in the application of its rule of decision, (3) the court analyzes the comparative

20  impairment of the interested jurisdictions. The court applies the law of the state whose

21  interest would be the *more impaired* if its law were *not applied."  Id.* (internal quotations

22  and citations omitted; emphasis in original).

23      Here, California's interests in this action outweigh those of New York.  The

24  transaction in question affected a California resident and concerned conduct occurring

25  within California.  Complaint, ¶¶ 3, 4, 14.  Other California taxpayers were deceived, and

26  the transaction had substantial California state tax implications (and no New York tax

27  implications).  Complaint, ¶¶ 14, 38.  The State of California has also been investigating

28  illegal tax shelters and offering an amnesty program based on disclosure of participation

1   in listed tax shelters, indicating its interest in regulating and overseeing tax shelters that

2   affect its residents.  *See* Cal. Rev. & Tax. § 19751; Cal. Rev & Tax § 18407(a)(4)

3   (adopting as "California Listed Transactions" all federal listed transactions for income tax

4   purposes) (amended in non-substantive ways, 2004 Cal. Legis. Serv. Ch. 183 (A.B.

5   3082)); FTB Chief Counsel Notice 2003-1 (Dec. 31, 2003).  *See also, e.g.,* Cal. Rev. &

6   Tax §§ 18628 (registration of tax shelters), 18648 (requiring lists of investors of tax

7   shelters); 19177 (penalty for promotion of tax shelters); 19182 (failure to file tax shelter

8   information); 19772 (incorporating reportable transactions under IRC); 19777 (penalties

9   for tax shelter); 19777.5 (amnesty programs for tax shelters); 19778 (interest penalties for

10  tax shelters). Clearly, California has demonstrated a powerful interest in applying its laws

11  to tax shelters such as the very transaction at issue here.

12         Based upon this, California law should apply to Plaintiff's tort claims.  Whether

13  New York or California law applies, however, Plaintiff's claims are timely, because under

14  either state's laws, he was not on notice of AIG's wrongdoing until late 2006, when he

15  finally became aware of AIG's true role in the transaction.  Therefore, regardless of

16  whether the Court adopts AIG's or Plaintiff's reasoning as to choice of law, AIG's motion

17  to dismiss should be denied.

18                    **2.    Neither the IRS Notices Nor the Tax Court Proceeding**
                            **Triggered the Running of the Statute of Limitations on**
19                          **Plaintiff's Fraud Claim**

20         California's statute of limitations for fraud is three years from the time that the

21  aggrieved party discovers the facts constituting fraud. *See Averbach v.*

22  *Vnesheconombank*, 280 F.Supp. 2d 945, 956 (N.D. Cal. 2003) (citing Cal. Code Civil

23  Proc. § 338(d)).  New York's statute of limitations for fraud is the <u>longer</u> of six years from

24  accrual or two years from discovery of the fraud.  C.P.L.R. § 213(8).   Both California and

25  New York law provide for an extension or tolling of fraud claims until the fraud is, or

26  ought to be, discovered. The statute commences to run only after one has knowledge of

27  facts sufficient to make a prudent person believe she or he may have been defrauded, thus

28  putting them on inquiry.  *Averbach*, 280 F. Supp. 2d at 956 (under California law,

1   discovery of the facts constituting a fraud occurs either when the victim has actual

2   knowledge of the fraud or when he has notice or information of circumstances to put a

3   reasonable person on inquiry, or has the opportunity to obtain knowledge from sources

4   open to his investigation); *Tijsseling v. General Acc. Assur. Corp.*, 55 Cal. App. 3d 623,

5   628 (1976); *Shannon v. Gordon,* 249 A.D.2d 291, 292 (1998) (under New York law, when

6   statute of limitations commences for fraud depends on when possessed knowledge of facts

7   from which he could reasonably have inferred the fraud).

8         AIG relies on two arguments in support of its statute of limitations defense.  First,

9   it claims that IRS Notices 1999-59 and 2000-44, which disallowed "basis-shifting"

10  transactions and were issued in 1999 and 2000 respectively, put Plaintiff on notice of

11  fraud and triggered the running of the statute of limitations.  Motion to Dismiss, p. 13.

12  Second, AIG argues that Plaintiff's filing of a petition in Tax Court in July 2004

13  challenging a possible disallowance of tax losses from his transaction, also triggered the

14  statute.   However, the documents relied upon by AIG in its motion do not support either

15  of these arguments.  Neither the IRS notices nor the Tax Court documents show that the

16  conduct of AIG or the transactions in which it entered with Plaintiff were the basis for the

17  IRS's determination, and none of these documents speak to or otherwise implicate

18  fraudulent conduct by AIG.

19          Inquiry notice ... must not be construed so broadly that the statute of limitations

20          starts running too soon for the victim of the fraud to be able to bring suit within a
            year [former statute]. The facts constituting such notice must be sufficiently

21          probative of fraud-sufficiently advanced beyond the stage of a mere suspicion,
            sufficiently confirmed or substantiated-not only to incite the victim to investigate

22          but also to enable him to tie up any loose ends and complete the investigation in
            time to file a timely suit.

23
24  *Tello v. Dean Witter Reynolds Inc.,* 410 F3d 1275, 1284 (11th Cir 2005) (*quoting Marks v.

25  CDW Computer Centers, Inc.,* 122 F.3d 363, 368 (7th Cir. 1997)).  Since neither of the

26  IRS Notices for the tax adjustment or tax court action reveals facts sufficient to determine

27  that Plaintiff was on notice of AIG's fraud, Plaintiff's claims are timely under both New

28  York and California law.

---

1    AIG contends that Plaintiff was placed on inquiry notice because of IRS Notices

2  1999-59 and 2000-44.  This argument has been rejected by other courts in perfectly

3  analogous circumstances.  In *Seippel v. Sidley, Austin, Brown & Wood LLP*, 399

4  F.Supp.2d 283 (2005), defendants argued that the plaintiffs were on inquiry notice for

5  fraud in connection with their COBRA tax shelter transaction at the time that IRS Notice

6  1999-59 was issued and that their claims had therefore expired.  The court rejected

7  defendants' arguments, finding:

8    IRS Notice 1999-59 cannot have placed the Seippels on inquiry notice. Where

9  "warning signs are accompanied by reliable words of comfort from management,
   [s]uch statements are among the factors that must be considered when evaluating
   whether the circumstances would suggest to an investor of ordinary intelligence

10  the probability that she has been defrauded." Here, before entering into the
   COBRA transaction, the Seippels were expressly informed by the Brown and

11  Wood Defendants and by Jenkens that *ACM Partnership* and Notice 1999-59 did
   not apply to COBRA. Such "reassuring statements will prevent the emergence of a

12  duty to inquire or dissipate such a duty only if an investor of ordinary intelligence
   would reasonably rely on the statements to allay the investor's concern."  The

13  Seippels were clearly entitled to rely on defendants' advice regarding technical
   issues of tax law.

14

15  *Seippel*, 399 F.Supp.2d at 291 (quoting *LC Capital Partners, L.P. v. Frontier Ins. Group*,

16  318 F.3d 148, 154 (2d Cir. 2003)).  *See also Hobbs v. Bateman Eichler, Hill Richards,*

17  *Inc.*, 164 Cal.App.3d 174, 201-02 (1985) (for purposes of establishing when statute of

18  limitations commences, "[w]here a fiduciary relationship exists, facts which ordinarily

19  require investigation may not incite suspicion and do not give rise to a duty of inquiry

20  (*citing Bennett v. Hibernia Bank* 47 Cal.2d 540, 560-3 (1956)).

21    Like *Seippel*, Plaintiff alleges that he received formal opinion letters from Sidley

22  Austin Brown & Wood LLP, Plaintiff's tax counsel and one of AIG's fellow tax-shelter

23  promoters, advising that Notices 1999-59 and 2000-44 did not apply to his transaction.[1]

24  Complaint, ¶¶ 16, 24.  Since his counsel specifically advised him that these IRS Notices

25  did not apply, knowledge of the Notices cannot be imputed to Plaintiff for purposes of

26  _____

[1]    Plaintiff's opinion letter from Sidley opined that Plaintiffs transaction was lawful

27  and had tax benefits that were likely to be recognized by the IRS.  Complaint, ¶ 16.  In
   addition, after IRS Notice 2000-44 was issued, Plaintiff obtained a further opinion letter

28  from Sidley specifically concluding that the Notice (which also refers to and incorporates
   the reasoning of IRS Notice 1999-59) did not apply.  Complaint, ¶ 24.

1   determining when he had knowledge of the fraud.  *Id.*  Tellingly, AIG does not point to

2   any portion of either IRS Notice that speaks to AIG.  It is also unclear how IRS Notice

3   1999-59, which was issued in 1999, could have put Plaintiff on notice of fraud *before* he

4   even entered into the transaction with AIG in 2000.  Complaint, ¶ 21; Motion to Dismiss,

5   p. 3 (acknowledging March 2000 as the earliest date of agreement between AIG and

6   Plaintiff regarding the transaction).

7          AIG also contends that the IRS's preliminary disallowance of Plaintiff's

8   deductions, and Plaintiff's subsequent filing of a Tax Court petition contesting the

9   determination, put him on notice of AIG's fraud.  As a preliminary matter, the mere fact

10  that the IRS disallowed Plaintiff's deductions does not mean that one must suspect fraud.

11  The "notice of disallowance" upon which AIG relies contains only *proposed* findings by

12  the IRS.  *See* AIG's Request for Judicial Notice ("RJN"), Ex. 1; *International Engine*

13  *Parts, Inc. v. Feddersen & Co.*, 9 Cal.4th 606,611-2 (1995) (discussing IRS deficiency

14  procedures). "It is clear that tax shelters can be risky ventures for reasons wholly unrelated

15  to fraud.  . . . There are many reasons, other than fraud on the part of [a tax shelter's]

16  managers and trading partners, for an investment in a tax shelter limited partnership to

17  become worthless and for its associated tax deductions to be disallowed by the IRS." *131*

18  *Main Street Associates v. Manko*, 897 F.Supp. 1507, 1518 (S.D.N.Y. 1995).

19         In fact, Plaintiff vigorously contested the IRS's preliminary findings, as evidenced

20  by the petition upon which AIG relies.  RJN, Ex. A.  Far from suggesting that Plaintiff

21  was on notice of fraud, the Tax Petition shows that Plaintiff firmly believed the tax

22  deductions and his transaction were legitimate.  If the tax savings were legal and

23  allowable, as Plaintiff believed, then he could not have considered himself defrauded.

24  This is so even with the specter of the IRS' disallowance looming. That a transaction does

25  not work out as expected, even if attributable to reliance upon false statements, does not

26  mean that one must conclude fraud is involved.  *See, e.g., DeMarco v. Lehman Brothers,*

27  *Inc.,* 309 F.Supp.2d 631, 637 (S.D.N.Y. 2004) (in securities fraud action, even though

28  stockholders had knowledge of economic injuries suffered as a result of false research

1   reports (loss causation) for period of time beyond statute of limitations, element of

2   scienter had not been known to stockholders until Securities and Exchange Commission

3   disclosed previously unknown emails, and statute of limitations was tolled until Plaintiff's

4   had basis for believing basis that stock analyst had intentionally lied).

5            Put another way, the fact that the IRS might disallow the tax deductions from his

6   transaction was very different than realizing that AIG, who claimed to be a "neutral"

7   broker, had fraudulently concealed its role in the transaction.  Complaint, ¶¶ 13-14.  *See*

8   *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 810 (2005) (where plaintiff filed

9   medical malpractice action against her surgeon but did not realize, until surgeon's

10  deposition, that manufacturer of stapler used during the surgery was potentially liable,

11  statute of limitations was tolled for cause of action against product manufacturer; cause of

12  action did not accrue until discovery of facts putting plaintiff on notice).  Here, AIG has

13  contended to this day, including in its motion to dismiss, that it was simply a third party

14  neutral.  Motion to Dismiss, p. 2, 4. AIG does not show any portion of the deficiency

15  notice or Plaintiff's Tax Petition (or any other document relied upon in AIG's motion to

16  dismiss) that reveals AIG's true conduct or its role in creating or conspiring with Sidley

17  and Arthur Andersen as to the fraudulent tax shelter.  It is little wonder, then, given

18  Plaintiff's lack of access to facts that would show otherwise, that he did not suspect and

19  was not put on notice of AIG's fraud until late 2006.[2]  It would be unreasonable to expect

20  any prudent person to suspect fraud on the part of someone where the IRS notices and

21  petition did not call into question that person's handling of the transaction.  In such a

22  situation, Plaintiff could not have been put on actual or constructive notice of AIG's fraud,

23  and the statute of limitations could not begin to run.

24           This is particularly so where a plaintiff relies heavily on others, such as

25  accountants and attorneys, as alleged here.  Complaint, ¶¶ 12-14, 16.  In such situations,

26  _____
    [2]      It was at this time that Plaintiff first learned about AIG's true role in helping to
27  create and promote tax shelters with Arthur Andersen, thanks to information shared by the
    government with Plaintiff's counsel.  Plaintiff concedes his omission of this allegation in
28  the Complaint and, if given leave to amend, can plead it in detail it in a subsequent
    complaint.

1   courts are loath to impute knowledge of fraud.  In *Mitschele v. Schultz*, 36 A.D.3d 249

2   (2008), the plaintiff sued her former accountant for fraud over representations made in

3   connection with an improper compensation arrangement that was supposed to reduce her

4   tax liabilities.  *Id*. at 250.  The misrepresentations at issue occurred more than six years

5   prior to the plaintiff's filing of an action, and she admitted suspicion about the truth of the

6   statements at the time they were made, though her accountant reassured her as to the

7   validity of his advice. The *Mitschele* Court reversed a dismissal of the fraud claims based

8   on the statute of limitations, holding that

> [M]ere suspicion will not constitute a sufficient substitute for knowledge of fraud
> [and w]here it does not conclusively appear that a plaintiff had knowledge of facts
> from which the fraud could reasonably be inferred, . . . the question should be left
> to the trier of the facts.

*Id*. at 256.  Though Plaintiff's tax deductions were challenged by the IRS - as deductions

often are - the fact that he relied on the advice of accountants and counsel and vigorously

contested the IRS's findings proves that he did not believe there was any fraud present.

        AIG expends considerable ink discussing *McKeown v. First Interstate Bank* in an

effort to suggest the opposite – that any disallowance by the IRS is indication of fraud on

the part of the persons responsible for the rejected transaction or deduction.  194 Cal. App.

3d 1225 (1987).  Indeed, *McKeown* is the only case cited by AIG in support of its

contention that the IRS notice and Tax Court petition show that plaintiff knew or should

have known of AIG's fraud.  Motion to Dismiss, p. 12.  However, *McKeown* was

concerned only with the question of when a taxpayer who had been given false

information concerning tax liability by a bank suffered "appreciable harm" such as to give

rise to a cause of action for negligence and fraud.  *Id.* at 1229-30.  Nowhere in this

decision does the Court discuss when the fraud was or should have been discovered.  *Id.*

*McKeown* thus cannot stand for the proposition that a taxpayer must have reason to know

he or she has been defrauded upon receipt of a deficiency notice from the IRS.

        Yet even if the court in *McKeown* had reached the conclusion that AIG suggests, it

would nevertheless be readily distinguishable from this case.  In *McKeown*, the bank

1   represented to the taxpayers that they would incur no tax liabilities for payments on a loan

2   made by their company, and the taxpayers assumed the loan based on those

3   representations. *Id.* at 1228. The IRS concluded otherwise and imposed taxes for which

4   the bank had expressly told the taxpayers they would not be liable. *Id.* The IRS's position

5   thus had a direct bearing on the truth of the bank's specific representations. Here, as AIG

6   has itself suggested, Arthur Andersen and Sidley provided advice to Plaintiff about the tax

7   consequences of the transaction. Complaint, ¶¶ 12-14, 16; Motion to Dismiss, pp. 1-2

8   (deflecting attention to Sidley and Arthur Andersen and questioning why they are not

9   defendants in this action).[3] Because AIG deliberately concealed its role in creating and

10  promoting the Son of BOSS tax shelter, and because AIG passed itself off as a "neutral"

11  bank, not a promoter of tax shelters connected with Arthur Andersen and Sidley, Plaintiff

12  had no way of suspecting that AIG was involved in any fraud when the tax consequences

13  of his transaction were challenged. Complaint, ¶¶ 12-14, 16, 28.

14          It is precisely because of this problem – that an IRS deficiency notice may not

15  provide notice of persons or conduct connected with a fraudulent tax shelter - that there is

16  no "bright line" rule establishing notice of fraud on a taxpayer through the deficiency

17  notice.

18          What this means in practice is that *per se* rules of actual or inquiry notice-such as a
        rule that notices of disallowances from the IRS are always enough to put an
19      investor on notice of fraud in the marketing and management of his tax-shelter
        investment-are not very helpful. Sometimes IRS disallowance notices will convey
20      the information necessary to provide notice, sometimes they will not-it all depends
        on the content of the notice, the nature of the loss, and the nature of the fraud.
21

22  *131 Main Street Associates*, 897 F.Supp 1507, 1515 (S.D.N.Y. 1995) *131 Main Street*

23  *Associates* is instructive. That case concerned a tax shelter scheme involving transactions

24  between partnerships and entities created by the tax shelter promoters. *Id.* at 1518-21.

25  The taxpayers brought suit alleging fraud based on the management of the tax shelters and

26  the transactions the tax shelter promoters entered into with third parties in order to

27  _____
    [3]      As AIG well knows, Arthur Andersen, with whom it created the Son of BOSS tax
28  shelter, is defunct and has left numerous taxpayers, not just Plaintiff, without recourse for
    the illegal tax shelters they have been sold.

1   effectuate the scheme.  *Id.*  Defendants contended that the IRS's prior investigation of tax

2   shelters, disallowance of the claimed deductions as being based on sham transactions, and

3   the fact that the taxpayers ultimately settled with IRS proved that the plaintiffs had at least

4   constructive notice of the alleged fraud more than four years before bringing suit, and

5   their claims had thus expired.  *Id.*

6          Rejecting these arguments, the *131 Main Street Associates* Court considered the

7   substance of the IRS investigation, deficiency notice, and settlement.  *Id.*  In disallowing

8   the deductions and finding the underling transactions a sham, the IRS had focused on

9   transactions between taxpayer partnerships and entities set up by the tax shelter promoters

10  and managers.  *Id.*  Plaintiffs' fraud claims, however, were based on purportedly arm's

11  length transactions between the tax shelter entities and an independent third-party trading

12  counterpart.  *Id.*  Even though those transactions and third-parties were part of the tax-

13  shelter scheme and defendants were alleged to have defrauded the taxpayers in connection

14  therewith, because the IRS disallowance was not based on the transactions with those

15  parties, the Court allowed plaintiffs to pursue their claims, holding that the disallowance

16  and settlement did not provide notice of potential fraud claims pertaining to the third

17  parties.  *Id.*  The statute of limitations on that fraudulent conduct was thus tolled until

18  plaintiffs subsequently became aware of the fraud.  *Id.* at 1518-21.

19         In this case, the situation is similar.  The IRS disallowed Plaintiff's tax deductions

20  because it found that certain transactions between entities that were set up by Arthur

21  Andersen were not legitimate and lacked economic substance.  RJN, Ex. 1.  The IRS'

22  disallowance deficiency notice did not directly concern the role of AIG, which was

23  purportedly an independent third party acting at arm's length, nor did the deficiency

24  notice or Tax Court petition call into question AIG's handling of the calls or puts.  RJN,

25  Ex. 1.  The IRS' disallowance thus did not provide notice of AIG's fraudulent conduct,

26  and it was not until subsequent information was uncovered that Plaintiff came to suspect

27  that AIG did in fact engage in fraudulent conduct related to the tax shelter.  Like the Court

28  in *131 Main Street Associates*, this Court should allow Plaintiff to pursue claims based on

1    that recently discovered conduct. *See also In re Worldcom*, 377 B.R. 77, 99 (S.D.N.Y.

2    2007) (in order to dismiss claim based on statute of limitations, defendants had to

3    demonstrate more than inquiry notice of a problematic transaction – they had to

4    demonstrate inquiry notice of the "falsity of WorldCom's stated obligation to use $25

5    million worth of WAXS's services per month" that would have put plaintiff on notice of

6    fraud); *Tello*, 410 F.3d at 1284 ("[I]nquiry notice is defined . . . to require more than

7    merely suspicious circumstances – to require that the suspicious circumstances place the

8    potential plaintiff in possession of, or with ready access to, the essential facts that he needs

9    in order to be able to sue.") (citing Judge Posner in *Fujisawa Pharmaceutical Co., Ltd. v.*

10    *Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997)).[4]

11        At the very least, there exists a question of fact as to whether Plaintiff had actual or

12    constructive notice of AIG's fraud. "Generally, statute of limitations issues raise questions

13    of fact that must be tried." *Kline v. Turner*, 87 Cal.App.4th 1369, 1374 (2001), citing

14    *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1112 (1988).  Only where undisputed facts are

15    susceptible of a single legitimate inference is dismissal proper based on the statute of

16    limitations.  *Id.  See also Reznor v. J. Artist Management, Inc.*, 365 F.Supp.2d 565, 576

17    (S.D.N.Y. 2005) (when plaintiff "knew or should have known of the alleged fraud is a

18    genuinely disputed question of fact that the jury must resolve"); *Govt of India v. Cargill*,

19    445 F. Supp. 714, 720-21 (D.C.N.Y. 1978).  Since the issue of when Plaintiff was put on

20    notice of AIG's fraud is one of fact, AIG's motion to dismiss based upon the statute of

21    limitations must be denied.

22        There is also an issue of fact as to whether the statute of limitations was tolled

23    based on fraudulent concealment or equitable tolling.  Both New York and California law

24    provide that where a defendant conceals his role in the fraud, such that a plaintiff would

25    ───────────────
     [4]      "More than bare access to information is required to start the statute of limitations
26    running."  *Id.*  Courts have found that there must be a suspicious circumstance, and *how*
     suspicious that circumstance must be as to that defendant, will depend on how easy it is
27    for Plaintiff to access information about the wrongdoing.  *Id.*  Here, based on AIG's
     continued insistence that it was no more than a "neutral" and that others, Arthur Andersen
28    and Sidley, are really to blame, it is not surprising that Plaintiff lacked both access and
     suspicion about AIG or its conduct.  Motion to Dismiss, pp. 1-2.

1  not suspect that he had a cause of action or was actively misled into thinking there was no

2  wrongdoing, the statute of limitations shall not begin to accrue.

3        The courts will not lightly seize upon some small circumstance to deny relief to a
         party plainly shown to have been actually defrauded against those who defrauded
4        him on the ground, forsooth, that he did not discover the fact that he had been
         cheated as soon as he might have done.  It is only where the party defrauded
5        should plainly have discovered the fraud except for his own inexcusable
         inattention that he will be charged with a discovery in advance of actual
6        knowledge on his part.

7  *San Bernadino County v. Sapp*, 156 Cal. App. 2d 550, 554 (1958) (*citing Victor Oil Co. v.*

8  *Drum*, 184 Cal. 226, 241 (1920)).  *See also Kotlyarsky v. New York Post*, 757 N.Y.S.2d

9  703, 707 (2003) (equitable tolling of limitations period is applicable where defendant has

10 wrongfully deceived or misled the plaintiff to conceal the existence of cause of action);

11 *Pointer v. Columbia Univ*., 1997 WL 86387 (S.D.N.Y. 1997) (defendant's misleading

12 statement justifies equitable tolling of limitations period because it may have caused

13 plaintiff to delay filing suit).

14       Here, Plaintiff has alleged that AIG intentionally and actively misled him into

15 believing that it had a "neutral" role in the transaction and concealed its true role in

16 helping to create and promote extremely complex and illegal tax shelters.  Complaint, ¶¶

17 12-13, 16-18.  Because of this, Plaintiff did not realize that AIG was connected to any

18 wrongdoing related to his transaction, nor did he suspect AIG of fraud.  Based upon this,

19 Plaintiff's fraud claim is timely under New York or California law.  *See M&T Mortg.*

20 *Corp. v. Miller*, 323 F. Supp. 2d 405, 411 (E.D.N.Y. 2004) (where fraudulent concealment

21 is pled and nothing in the complaint precludes a party from developing facts showing a

22 basis for fraudulent concealment and thus for equitable tolling, a motion to dismiss on the

23 statute of limitations will be denied).

24       **C.      Plaintiff's Fraud Claim Meets the Pleading Standard of Rule 9(b)**

25       Rule 9(b) requires Plaintiff to plead with particularity the circumstances of the

26 alleged fraud in order to place defendants on notice of the misconduct with which they are

27 charged.  Plaintiff is only required to plead with enough particularity to provide

28 defendants with "a reasonable opportunity to answer the complaint and adequate

1  information to frame a response." *Certilman v. Hardcastle, Ltd.*, 754 F. Supp. 974, 978

2  (E.D.N.Y. 1991) (quoting *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557-58 (2d Cir. 1979),

3  *cert. denied,* 446 U.S. 946 (1980)).  This is in order to harmonize Rule 9(b) with Rule 8,

4  which provides that a plaintiff need only plead a "short and plain" statement of the claim

5  that is "simple, concise and direct."  *Id.*  Rule 9(b) does not "require the pleading of

6  detailed evidentiary matters, nor does it require any particularity in connection with an

7  averment of intent, knowledge or condition of mind."  *SEC v. Management Dynamics,*

8  *Inc.*, 1973 WL 434, *1 (S.D.N.Y. 1973) (where defendants were put on notice by

9  pleadings of the circumstances of fraud and could therefore prepare a responsive answer

10  to SEC's complaint, purposes of Rule 9(b) were satisfied).  *See also In re J. Baranello &*

11  *Sons, Inc.*, 149 B.R. 19, 29 (E.D.N.Y. 1992) (finding general allegations of fraud

12  sufficiently specific "[w]here conduct complained of occur[ed] over extended period of

13  time, and requirement for particularity of fraudulent allegations [under Rule 9(b) was]

14  lessened" and less specificity was also required where Plaintiff had limited investigation

15  available to him pre-discovery); *Bharucha v. Reuters Holdings PLC*, 810 F. Supp. 37, 41-

16  42 (E.D.N.Y. 1993) (where facts evidencing fraud were almost exclusively within

17  defendant's knowledge, pleading on information and belief was appropriate to satisfy

18  Rule 9(b)); *Perrott v. U.S. Banking Corp.*, 53 F. Supp. 953, 957 (D.C. Del. 1944) (Rule

19  9(b) only requires the allegation of ultimate facts, not evidence, and even where

20  defendants were not able to file a responsible pleading, court held that relief was available

21  to them under other procedural mechanisms); *Tryforos v. Icarian Development Co., S.A.*,

22  47 F.R.D. 191, 195-96 (N.D. Ill. 1969) (where plaintiff alleged that transfer of cash and

23  ships were diverted to defendants, such that plaintiff did not get the benefits of either, no

24  further specificity under Rule 9(b) was necessary).

25     Plaintiff has alleged the active role that AIG played in creating, promoting

26  and facilitating illegal tax shelter schemes, including the Son of BOSS tax shelter sold to

27  him.  Specifically, he has alleged that AIG knew "that the Son of BOSS was a sham that

28  would not be recognized by federal or state taxing authorities for income tax purposes, yet

1    facilitated this strategy and helped induce [Plaintiff] to purchase it in order to generate

2    enormous fees for themselves." Complaint, ¶¶ 12, 20. Plaintiff alleges that had he known

3    about this, he would not have entered into the transaction, but he was misled, in part, by

4    transactional documentation presented by AIG to give his transaction the "appearance and

5    semblance of . . . a legitimate investment strategy." Complaint, ¶¶ 12, 16. He has alleged

6    that AIG concealed its role in helping create the Son of BOSS transaction so as to claim

7    an objective, neutral role that it did not have.[5] Complaint, ¶ 13. Plaintiff alleges that AIG

8    set up sham limited liability companies that turned out later to be "shell" companies

9    created solely to further fraudulent tax shelter activity. *Id.* AIG failed to register any of

10   the Son of BOSS transactions as tax shelters. Complaint, ¶ 15. AIG also knew that the

11   legal opinion letter provided to Plaintiff advising him that the transaction was legal was a

12   mass-generated boilerplate letter from a firm with a vested interest in the promotion of

13   Son of BOSS yet AIG never disclosed this to Plaintiff. Complaint, ¶ 16. Most

14   significantly, Plaintiff believed that his transaction was customized expressly for him and

15   his family's circumstances. He had no idea that he was purchasing a mass-marketed tax

16   shelter, and AIG, despite knowing this – because it had sold others of these in conjunction

17   with Arthur Anderson – never disclosed otherwise to him. Complaint, ¶¶ 16-17, 23. *See*

18   *also* Complaint, ¶¶ 25, 28.

19          These numerous, specific allegations of fraud and fraudulent omissions

20   provide AIG with more than enough notice to reasonably frame its response and answer

21   the complaint with respect to the fraud allegations. Thus, the complaint meets the

22   pleading standards of Rule 9(b).[6]

---

23   [5]     This is significant, because it shows that AIG had a vested role in making the
24   transaction appear legitimate when, in fact, it was a sham tax shelter. It also allowed
     Plaintiff to provide AIG with enormous discretion with regard to the investment, since
     Plaintiff believed that AIG was a "neutral broker." Complaint, ¶ 13.

25   [6]     AIG suggests that Plaintiff cannot rely on two of the alleged misrepresentations,
     because the transactional documentation contradicts them. Motion to Dismiss, pp. 19-20.
26   Since those are not the only misrepresentations or material omissions on which Plaintiff
     relies, even if true, this would not defeat Plaintiff's fraud claim. *See, e.g.,* Complaint, ¶¶
27   12, 13, 15-17, 20, 23, 25, 28. However, it is also untrue. The first misrepresentation has
     to do with AIG's concealment of "kickback" fees. Complaint, ¶¶ 13, 17; Motion to
28   Dismiss, p. 19. Although the documentation cited by AIG discloses "a fee" paid by

1

**D.   AIG's Boilerplate Disclaimers Do Not Preclude Plaintiff's Fraud Claim**

2      AIG also argues that boilerplate, pre-dispute contract disclaimers contained in its

3   ISDA agreements should preclude any fraud claims.  AIG is wrong.   It is the long-

4   standing and well-established policy of California that disclaimers such as those relied

5   upon by AIG are ineffective.  *See, e.g.,  Simmons v. Ratterree Land Co*., 217 Cal. 201, 204

6   (1932) (seller cannot escape liability for his own fraud or misrepresentations by

7   statements in contract that purchaser relies on no representations except those mentioned

8   therein); *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 794 (2008) (all contracts

9   that attempt to exempt anyone from responsibility for his own fraud, whether willful or

10  negligent, "are against the policy of the law" and thus commercial lease provision

11  disclaiming reliance on representations of lessor was not effective to bar plaintiff from

12  asserting fraud claim or showing reasonable reliance on misrepresentations); 1 Witkin,

13  Summary of Cal. Law, supra, Contracts, § 304, p. 330. ("A party to a contract who has

14  been guilty of fraud in its inducement cannot absolve himself or herself from the effects of

15  his or her fraud by any stipulation in the contract, either that no representations have been

16  made, or that any right that might be grounded upon them is waived. Such a stipulation or

17  waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the

18  reason that fraud renders the whole agreement voidable, including the waiver

19  provision.").

20  Arthur Andersen for AIG's "assistance," this is different than a "kickback," which implies
    a fee based on referral of clients or business and often involving illegal conduct.  One of
21  the key points of Plaintiff's fraud claim is that he did not know that AIG participated in
    creating the transaction in the first place or that it mass-marketed it with Arthur Andersen
22  to others, and the fact that the fees were "kickbacks," as opposed to ordinary banking fees,
    was a significant nondisclosure.  Complaint, ¶¶ 13, 17.  For the second misrepresentation,
23  AIG claims that it disclosed in one of its agreements that it had paid fees for "similar
    transactions" and that Plaintiff should therefore have realized that his was not a
24  customized transaction.  Motion to Dismiss, p. 19.  Again, this does not address the
    omission at issue.  AIG's role was supposed to involve selecting the "basket" of securities
25  and arranging call and put options.  It was not unexpected for a Bank to have engaged in
    those types of transactions in the past or future.  What was unexpected and never
26  disclosed to Plaintiff was AIG's role in creating a Son of BOSS tax shelter and helping
    promote it to Plaintiff as though it was a customized investment vehicle and not an illegal
27  tax shelter.  Complaint, ¶¶ 16-17, 23.  Therefore, with respect to both alleged omissions –
    which AIG seems to have understood very well in framing a substantive defense in its
28  motion to dismiss – Plaintiff has properly pled a fraud claim under Rule 9(b).

1    Under New York law, the result is the same.  There, a disclaimer only eliminates

2    reliance for purposes of a fraud claim where it relates to the specific representation

3    disclaimed.  *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.,* 382 F.Supp.2d 411, 417

4    (S.D.N.Y. 2003) (A "disclaimer is generally enforceable only if it 'tracks the substance of

5    the alleged misrepresentation'") (quoting *Caiola v. Citibank, N.A.,* 295 F.3d 312, 330 (2d

6    Cir. 2002). Where the disclaimer does not address specific and discrete representations, it

7    is ineffective.  "It is the specificity of the disclaimer which 'destroys the allegations in

8    plaintiff's complaint that the agreement was executed in reliance upon these contrary oral

9    representations . . . .'" *Id.  See also Transit Rail, LLC v. Marsala*, 2007 WL 2089273, *10

10   (W.D.N.Y. 2007) (where the representations upon which plaintiff claimed reliance had to

11   do with the overall corporate structure and financial status of company, none of which was

12   specifically disclaimed in the purchase agreements, general reliance disclaimers were

13   ineffective); *Merrill Lynch & Co., Inc.,* 382 F.Supp.2d at, 417-9 (S.D.N.Y. 2003)

14   (denying motion to dismiss fraud claims despite general disclaimer where disclaimer did

15   not specifically address sham trades or executive's qualifications.) *Cf. Europadisk

16   Holdings, LLC. v. Shelton,* 2004 WL 613109, *3 (S.D.N.Y. 2004) (integration clause of

17   stock purchase agreement did not specifically disclaim reliance on defendant's

18   representations as to company's financial status).[7]

19        Furthermore, even if the disclaimers upon which AIG relies were specific, they

20   would still be ineffective because Plaintiff's claims are based largely on AIG's

21   concealment of facts about the transactions unknown to Plaintiff.  Complaint, ¶¶ 12, 13,

22   _____

23   [7]    *Conwill v. Arthur Andersen LLP*, an unpublished trial court decision upon which
      AIG heavily relies, is readily distinguishable from Plaintiff's claims here. 12 Misc.3d
      1171(A) *11 (N.Y.Sup. 2006).  In *Conwill*, the plaintiff expressly and specifically

24   disclaimed a fiduciary relationship with Sumitomo Bank, and then later asserted claims
      based upon an alleged breach of fiduciary duty.  In that case, the claims asserted were

25   inconsistent with a specific disclaimer relating to the alleged fiduciary relationship.  As in
      *Conwill*, the agreement relied upon by AIG also contains a disclaimer concerning a

26   fiduciary relationship.  The difference, of course, is that, in this case, Plaintiff has not
      asserted breach of fiduciary duty against AIG and his claims do not depend on the

27   existence of a fiduciary duty.  Unlike the situation in *Conwill*, Plaintiff's causes of action
      do not contradict the express disclaimer and the disclaimer does not, therefore, provide

28   AIG with a defense.

1   16-18, 23, 28.   "[E]ven such an express waiver or disclaimer 'will not be given effect

2   where the facts are peculiarly within the knowledge of the party invoking it.'   *Banque*

3   *Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 155 (2d

4   Cir.1995), quoting *Stambovsky v. Ackley,* 169 A.D.2d 254, 572 N.Y.S.2d 672, 677 (1991.)

5   See also, *Tahini Investments, Ltd. v. Bobrowsky*, 99 A.D.2d 489, 490 (1984) (even where

6   parties have executed a specific disclaimer of reliance on seller's representations, a

7   purchaser may not be precluded from claiming reliance on misrepresentations if the

8   misrepresented facts are peculiarly within the seller's knowledge).

9   **E.  The Alleged Omissions by AIG Support a Claim of Fraud**

10        AIG also suggests that there can be no fraud claim because AIG did not owe a

11   "duty" to Plaintiff to disclose the truth about the Son of BOSS transaction sold to him.

12   Motion to Dismiss, p. 18.  In so arguing, AIG ignores the affirmative misrepresentations

13   and fraudulent conduct alleged of AIG.  *See* Section D *supra*.  AIG is also wrong as to the

14   law regarding fraudulent omissions.

15        To prove common law fraud under New York law, a plaintiff must show only that

16   the defendant made a material false misrepresentation, intending to defraud the plaintiff,

17   and the plaintiff suffered damage as a result.  *Banque Arabe Et Internationale*

18   *D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2nd Cir. 1995) (citing cases).

19   Only where fraudulent concealment is asserted must a plaintiff "also prove that the

20   defendant had a duty to disclose the material information."  *Id.*  Such a duty does not

21   depend upon a fiduciary relationship, as AIG suggests, but arises in any business

22   transaction where one party makes partial or incomplete representations or where one

23   party possesses superior knowledge of certain information not readily available to the

24   counterparty.  *Id.* at 155.  Both are present here.  Complaint, ¶¶ 12, 13, 16-18, 23, 28.  As

25   the *Banque Arabe* Court held, "[i]t is no longer acceptable, if it ever was, to conclude in

26   knowing silence, a transaction damaging to a party who is mistaken about its basic factual

27   assumptions when . . . he would reasonably expect a disclosure."  *Id.* at 150 ("New York

28   has joined other jurisdictions in limiting the 'privilege to take advantage of ignorance' and

1   has rejected 'the dubious business ethics of the bargaining of transactions with which

2   deceit was at first concerned") (citations omitted).

3          The analysis is the same under California law.  In California, the elements of fraud

4   are a misrepresentation, which can occur by means of a false representation, concealment

5   or nondisclosure; knowledge of falsity; intent to defraud or induce reliance; justifiable

6   reliance; and resulting damage.  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)

7   (quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778).  To establish

8   fraud through nondisclosure or concealment of facts, it is necessary to show the defendant

9   "was under a legal duty to disclose them."  *OCM Principal Opportunities Fund v. CIBC*

10  *World Markets Corp.*, 157 Cal. App. 4th 835, 845 (2007).  Such a legal duty to disclose

11  arises in many relationships, not just ones involving a fiduciary duty.  For example, where

12  a relationship is grounded "in some sort of transaction between the parties," including that

13  of "seller and buyer . . . or parties entering into any kind of contractual agreement," a duty

14  of disclosure applies.  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997).  Here, it is

15  undisputed that AIG and Plaintiff had a transaction whereby AIG sold its services, as well

16  as its "basket" of options.  Motion to Dismiss, pp. 3-6.  Under these circumstances, where

17  AIG concealed from Plaintiff its role in creating the transaction and its knowledge that it

18  was an illegal tax shelter, Plaintiff's fraud claim is properly pled.  Complaint, ¶¶ 12, 13,

19  16-18, 23, 28.

20       **F.**    **Plaintiff Has Properly Pled a Claim for Unjust Enrichment**

21         AIG argues that Plaintiff cannot maintain a claim for unjust enrichment because

22  there were express written contracts between AIG and Plaintiff regarding his Son of

23  BOSS transaction.  Plaintiff has not, however, brought a breach of contract cause of action

24  against AIG based upon those written contracts, and, in fact, he explicitly alleges that

25  those contracts had an illegal purpose and therefore are likely to be void or unenforceable.

26  Complaint, ¶ 17.  Under both California and New York law, where an express contract is

27  unenforceable, a plaintiff may assert an unjust enrichment claim.  *See Dunkin v. Boskey*,

28  82 Cal. App. 4th 171, 196 (2000) (where a contract is unenforceable due to illegality or

1    public policy, a plaintiff may recover his economic losses under an unjust enrichment

2    theory); *Katz v. Zuckerman*, 481 N.Y.S.2d 271, 274 (1984) (where express contract was

3    tainted with illegality and thus unenforceable, plaintiff could recover in equity under

4    unjust enrichment); *Waldman v. Englishtown Sportswear, Ltd.*, 460 N.Y.S.2d 552, 556

5    (1983) (where express contract is unenforceable, unjust enrichment claim will lie). *See*

6    *also Huskinson & Brown LLP v. Wolf*, 32 Cal. 4th 453, 457 (2004) (trial court permitted

7    plaintiff to try both breach of contract and unjust enrichment claims, and when written

8    contract was found to be unenforceable, trial court awarded damages under unjust

9    enrichment theory).  Here, at least until it can be determined whether the written contracts

10   are enforceable, it is premature to deny Plaintiff the opportunity to seek redress in equity

11   through his unjust enrichment claim.

12         AIG also contends that Plaintiff's unjust enrichment claim is untimely.  This is not

13   so.  Where an unjust enrichment claim is based upon fraud, the statute of limitations

14   begins to run three years from the date that the plaintiff actually discovered or should have

15   discovered the fraud.  *Agair Inc. v. Shaefferi*, 232 Cal. App. 2d 513, 518 (1965) (holding

16   that California Code of Civil Proc. Section 338(4), rather than Section 339(1), applied to

17   unjust enrichment claim); *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1670

18   (1992) (applying fraud statute of limitations to unjust enrichment claim).  Similarly, even

19   if California Code of Civil Procedure Section 339, to which AIG cites as the basis for its

20   claim that there is a two year, not a three year statute of limitations on unjust enrichment

21   claims, were applicable, the discovery rules would still apply.  AIG relies on Section

22   339(1), but ignores Section 339(3), which applies to claims involving the rescission of a

23   contract.  Section 339(3) provides that "[w]here the ground for rescission is fraud or

24   mistake, the time does not begin to run until the discovery by the aggrieved party of the

25   facts constituting the fraud or mistake." *See also Neel v. Magana, Olney, Levy, Cathcart*

26   *& Gelfand*, 6 Cal. 3d 176, 182-94 (1971) (action brought under Section 339(1) did not

27   accrue until discovery of injury).  Here, Plaintiff's unjust enrichment claim is based upon

28   the rescission or unenforceability of contracts due to illegality and/or fraud.  Complaint, ¶

17. As such, California's discovery rule applies.[8] Since Plaintiff did not discover the basis for his fraud claim against AIG until last year, and was prevented by AIG from doing so based upon fraudulent concealment, his unjust enrichment claim is timely. *See* Section B *supra*.

### G.    Plaintiff Has A Viable Unfair Business Practices Claim

AIG argues that New York law applies and that any unfair business practices claim must be asserted pursuant to New York General Business Law Section 349, the equivalent of California's Bus. & Prof. Code Section 17200. Here, however, California law applies because Plaintiff's Section 17200 claim arises in tort and is therefore not affected by AIG's generalized choice of law provisions.[9] *See Medical Instrument*, 2005 WL 1926673, *3. Both Plaintiff and AIG agree that California unfair business practices claims have a four year statute of limitations. Motion to Dismiss, p. 14, fn. 10. Here, the earliest possible date that AIG can claim that Plaintiff was on notice of anything is April 2004, when the IRS first indicated that it might disallow his transaction.[10] Motion to Dismiss, p. 11. Prior to that time, Plaintiff had been specifically advised that his transaction was legitimate and that IRS rulings did not apply, and AIG and the other defendants concealed any facts that might have put Plaintiff on notice otherwise. Complaint, ¶¶ 12-13, 16-18. As a result, California would equitably toll the statute of limitations until at least April 2004. *San Bernadino County*, 156 Cal. App. 2d at 554. Since Plaintiff's case was filed within four years of that date, it is timely.[11]

---

[8]     Under New York law, which provides for a six year statute of limitations on unjust enrichment, Plaintiff's claim would also be timely, since it is based upon fraud and there is no bar until Plaintiff had reason to discover the wrongdoing. C.P.L.R. § 213(2); *St. Paul Travelers Inc. Co. v. Nandi*, 2007 WL 1662050, *7 (N.Y. Sup. 2007) (statute of limitations did not begin for fraud or unjust enrichment claims until a regulation became revised that gave plaintiff a right to recoup payments made to fraudulently incorporated or improperly licensed medical providers).

[9]     If the Court is inclined to find otherwise, Plaintiff respectfully requests leave to amend to include the New York statute.

[10]     Plaintiff disputes that he was put on reasonable notice of AIG's fraud as of April 2004. *See* Section B *supra*.

[11]     It is also unsettled under California law whether the discovery rule applies to Section 17200 claims. *See Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1029-30 (2000) (assuming that discovery rule applies to Section 17200 unfair business practices claim); *Massachusetts Mutual Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282,

1

2       Even if AIG was correct about New York law applying, a Section 349 unfair

3   business practices claim would still be timely.  Section 349 provides that "[d]eceptive acts

4   or practices in the conduct of any business, trade or commerce or in the furnishing of any

5   service in this state are hereby declared unlawful."  § 349(a).  In order to state a Section

6   349 claim, a plaintiff must show that the act or practice was consumer-oriented, that the

7   act or practice was misleading in some material respect, and that the plaintiff was injured

8   as a result of the deceptive practice or act.  *In re Evergreen Mut. Funds Fee Litigation*,

9   423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006).  Section 349 has a three year statute of

10  limitations.  Although a discovery rule does not apply to a Section 349 claim, equitable

11  tolling does apply in cases of fraudulent concealment.  *See M&T Mortg. Corp.*, 323 F.

12  Supp. 2d at 411.

13      In order to prove fraudulent concealment sufficient to toll the statute of limitations,

14  the plaintiff must show that defendants misled the plaintiff into a belief that he had no

15  cause of action or contrived "to commit a wrong in such a manner as to conceal the very

16  existence of a cause of action."  *Rodriguez v. Village of Islan Park, Inc.*, 1991 WL

17  128568, *9 (E.D.N.Y. 1991).  For fraudulent concealment purposes, a defendant's acts

18  "can be either self-concealing or they can be such that they require additional acts by the

19  defendant to accomplish the concealment."  *Id.*  Here, Plaintiff's Complaint alleges that

20  AIG concealed its true role in the transaction.  Complaint, ¶¶ 12-13, 16-18.  As such,

21  Plaintiff had no way of knowing that he had a cause of action against AIG.  Thus,

22  Plaintiff's Section 349 claim would have been tolled until late 2006, when he discovered

23  1295 (2002) (discovery rule applies to unfair competition claims).  *But cf. Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir. 2002)

24  (applying four year UCL statute of limitations upon accrual, not discovery, of claim); *Snapp & Associates Ins. Services, Inc. v. Robertson*, 96 Cal. App. 4th 884, 891 (2002)

25  (discovery rule does not apply to unfair competition claims).  *See also Grisham v. Philip Morris USA*, 40 Cal. 4th 623, 635 fn. 7 (2007) (recognizing unsettled dispute as to whether

26  discovery rule applies to unfair competition claims).  If the discovery rule does apply, there is no question that Plaintiff's cause of action would be timely since the earliest

27  possible time in which he could have been put on notice would be April 2004, the date on which the IRS indicated that it might disallow Plaintiff's transaction.  Motion to Dismiss,

28  p. 11.

1   AIG's true role and brought suit.  To the extent that AIG claims otherwise, it is an issue of

2   fact that cannot be resolved on a motion to dismiss.  *See M&T Mortgage*, 323 F. Supp. 2d

3   at 411.  *See also* Section B *supra*.

4   **H.    Plaintiff Is Entitled to a Jury Trial**

5   Where a federal court's jurisdiction is founded on diversity, the choice-of-law

6   principles of the forum state control.  *Bassidji v. Goe*, 413 F.3d 928, 933 (9th Cir. 2005).

7   Here, California courts follow Section 187 of the Restatement (Second) of Conflict of

8   Laws in determining the enforceability of a contractual choice-of-law provisions.  *See*

9   *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 465 (1992).  Though courts may

10  generally respect choice-of–law provisions contractually selected by the parties,  where

11  "there is a fundamental conflict with California law" and California "has a materially

12  greater interest than the chosen state, the choice of law shall not be enforced." *Id*. at 466.

13  That is, courts will not "enforce a law contrary to this state's fundamental policy." *Id*.

14  There is no doubt that pre-dispute contractual jury waivers, and thus any law

15  authorizing them, is contrary to a fundamental policy of California.  *See Grafton Partners*

16  *L.P. v. Superior Court,* 36 Cal.4th 944, 967 (2005) (pre-dispute contractual jury waivers

17  are void and unenforceable as contrary to the California Constitution, California statutes,

18  and California's fundamental policy of protecting right to trial by jury).  There is also no

19  doubt that California has a greater interest than New York in this dispute. California has a

20  much greater interest than New York with respect to jury waivers in actions brought

21  within the state. Also, Plaintiff is a citizen of California, defendants' tortious conduct was

22  felt and caused injury in California, and the conduct complained of relates, in part, to the

23  payment of millions of dollars in taxes in and to the State of California.  Complaint, ¶¶ 3-

24  4, 12, 14, 38.  In contrast, of the five AIG defendants, none is organized under the laws of

25  New York and only one has its principal place of business in that state.  Complaint, ¶¶ 5-

26  9.  Accordingly, California's interest in this litigation outweighs that of New York.  This,

27  combined with California's fundamental policy of  "zealously guard[ing]" the right to a

28  jury trial, renders unenforceable the jury waiver asserted by AIG.

1    **III.    CONCLUSION**

2         For all of the above reasons, Plaintiff respectfully requests that the Court deny

3    AIG's motion to dismiss and motion to strike.  In the event that the Court is inclined to

4    grant any portion of AIG's motion to dismiss, Plaintiff requests that he be granted an

5    opportunity to cure any defects with leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122,

6    1130 (9th Cir. 2000) (holding that a district court should always grant leave to amend,

7    regardless of whether a request to amend is made, unless it determines that the pleading

8    could not possibly be cured by the allegation of other facts).

9

     Dated:  March 17, 2008

10

11                                     LUKENS LAW GROUP
                                       WILLIAM M. LUKENS (State Bar No. 037196)
                                       JENNIFER L. JONAK (State Bar No. 191323)
12

13

                                       By:  _____/s/ Jennifer L. Jonak_____
14                                             Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28