IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Richard T. Thieriot, | NO. C 07-05069 JW |
|         Plaintiff,<br>  v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| AIG Matched Funding, et al., | |
|         Defendants. | |

## I. INTRODUCTION

Richard T. Thieriot ("Plaintiff") brings this diversity action against American International Group, Inc. and various subsidiaries (collectively, "Defendants") alleging fraud, unjust enrichment and unfair business practices pursuant to Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiff alleges that Defendants fraudulently induced him into purchasing a Son of BOSS tax shelter by misrepresenting how the Internal Revenue Service ("IRS") would treat the shelter for tax purposes.

Presently before the Court is Defendants' Motion to Dismiss and to Strike. The Court conducted a hearing on April 7, 2008. Based on the papers submitted to date and oral arguments of counsel, the Court GRANTS in part and DENIES in part Defendants' motion.

## II. BACKGROUND

In a Complaint filed on October 2, 2007, Plaintiff alleges as follows:

    Plaintiff is an individual residing in the Northern District of California. (Complaint for Fraud, Unjust Enrichment and Unfair Business Practices ¶ 4, hereafter, "Complaint,"

Docket Item No. 1.) American International Group, Inc. is a Delaware corporation with its principal place of business in New York. (Id. ¶¶ 5-9.) Defendant AIG Financial Products Corp. is a Delaware corporation with its principal place of business in Connecticut; it is a subsidiary of American International Group, Inc. (Id. ¶ 8.) Defendant AIG Matched Funding Corp., a Delaware corporation with its principal place of business in Connecticut, Defendant AIG Financial Securities Corp., a Delaware corporation with its principal place of business in Connecticut, and Defendant Banque AIG, a French corporation with its principal place of business in France, are all subsidiaries of AIG Financial Products Corp. (Id. ¶¶ 5-9.)

In 2000, Plaintiff was presented with an investment strategy by his long-time tax and investment advisor at Arthur Andersen LLP ("Arthur Andersen"). (Id. ¶ 12.) This strategy, later known as "Son of BOSS," was marketed to Plaintiff as a sound investment that provided legal tax benefits. (Id.)

BOSS is an acronym for "bond and option sales strategy," which is a type of tax shelter. See I.R.S. Notice 2000-44, 2000-2 C.B. 255 (August 11, 2000). Son of BOSS is a derivative of the older BOSS strategy. While there are a number of Son of BOSS variants, each involves the transfer of fixed assets encumbered by uncertain liabilities to a partnership in order to increase a partner's basis. The partner then sells this basis for a large, but not out-of-pocket, loss which is claimed on his individual tax returns.[1]

---

[1] An example of a Son of BOSS transaction is as follows: (1) Investor A, buys a call option for a set of stocks for $100, thereby acquiring the right to purchase the securities at a determined strike price if A chooses to exercise the option. See I.R.S. Notice 2000-44, 2000-2 C.B. 255 (August 11, 2000); (2) A, then sells a call option for an identical set of underlying stocks for $100, thereby obligating A to sell the securities at a determined strike price if the purchaser decides to exercise the option. See id.; (3) A, a partner in Company X, contributes both the purchased call option and the written call option to X. See id. The purchased option is a fixed and determinable asset worth $100, while the liability created by the written option is uncertain, allowing X to ignore it in computing the partnership basis. See id. As a result, A would establish a basis of $100 in X determined solely on the value of the purchased call option. See id. A's $100 interest in X would then be sold for an amount less than the established basis thereby creating a loss that would be written off by A. See id.

2

Although Defendants purported to act as a third party neutral, they created, coordinated, promoted, and facilitated the Son of BOSS transaction and earned at least $1.8 million in fees for their efforts. (Id. ¶ 13.) Unbeknownst to Plaintiff, Defendants also paid Arthur Andersen referral fees. (Id.)

Defendants provided documents to Plaintiff representing that Son of BOSS was a legitimate investment strategy. (Id. ¶ 12.) All documentation for this transaction was presented to Plaintiff in the Northern District of California and the agreements were negotiated and executed in the Northern District of California (collectively, the "Agreement"). (Id.)

Among the documentation that Plaintiff received was an opinion letter from Brown & Wood LLP ("Sidley"), now known as Sidley Austin Brown & Wood LLP, stating that the tax benefits were likely to be recognized by the IRS. (Id. ¶ 16.) People other than Plaintiff however, received similar opinion letters for which Sidley was paid over $1.4 million in fees. (Id.) Defendants knew but did not tell Plaintiff that his opinion letter was not unique. (Id.) Defendants also knew that Son of BOSS would be considered a sham tax shelter by the IRS. (Id. ¶¶ 11-12.)

On December 27, 1999, the IRS issued Notice 1999-59 and on September 5, 2000, the IRS issued Notice 2000-44 warning that Son of BOSS transactions would not be recognized as a tax loss. (Id. ¶¶ 21-22.) On February 23, 2001, Sidley provided an additional opinion letter advising Plaintiff that, even in light of IRS Notice 2000-44, the IRS would likely recognize losses under Plaintiff's Son of BOSS shelter. (Id. ¶ 24.)

Plaintiff paid approximately $7 million for the Son of BOSS transaction. (Id. ¶ 12.) Plaintiff's tax returns for 2000, have since been audited by the IRS and the losses due to Son of BOSS disallowed.[2] (Id. ¶ 26.) The State of California Franchise Tax Board has also

---

[2] The Court takes judicial notice pursuant to the Federal Rules of Evidence 201 that on July 9, 2004, Plaintiff filed Parrott Enterprises, LLC, Angelica Thieriot, Tax Matters Partner v. Commissioner of Internal Revenue contesting year 2000 losses pursuant to Son of BOSS. Case

3

disallowed Son of BOSS for state income tax purposes. (Id.) Plaintiff has been assessed approximately $56 million in back taxes, interest, and penalties as a result of the Son of BOSS transaction. (Id. ¶ 12.)

On the basis of the allegations outlined above, Plaintiff alleges three causes of action: (1) Fraud; (2) Unjust Enrichment; and (3) Violation of Unfair Competition Law pursuant to Cal. Bus. Prof. Code §§ 17200 *et seq*.

Presently before the Court is Defendants' motion to dismiss.

### III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

---

Docket No. 11930-04 (U.S. Tax Court).

4

## IV.  DISCUSSION

Defendants move to dismiss Plaintiff's claims on the following grounds: (1) Plaintiff's unjust enrichment claim fails because the relationship is governed by contract; (2) Plaintiff's claims are time barred; and (3) Plaintiff fails to allege any false statement by any of the Defendants or any duty to disclose and fails to plead fraud with particularity under Rule 9(b).  (Motion at 8-22.)  In addition, Defendants move to strike Plaintiff's demand for a jury trial on the ground that Plaintiff has waived his right to jury trial.  (Motion at 23.)

The Court proceeds to consider each of these issues in turn.  However, the Court first considers choice of law principles to determine the state law that applies to Plaintiff's causes of action; this determination is relevant in addressing several of Defendants' contentions.

### A.  Choice of Law

This case was brought in the Northern District of California as a diversity case.  In suits based on diversity jurisdiction, district courts are to apply the choice of law principles of the forum state.  Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3 (1975).  Accordingly, California choice of law principles govern.

Depending on the circumstances, California has two different analyses for selecting which law should be applied in an action.  When the parties have an effective agreement that another jurisdiction's law will govern their disputes, the contractual choice of law provision should be applied "unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice of law, or (b) application of the law of the chosen state would be contrary to the fundamental policy of the state which has materially greater interest than the chosen state."  Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 466 (1992); See also Washington Bank, FA v. Superior Court, 24 Cal. 4th 906, 914-15 (2001).

In this case, Defendants contend that the Court should apply New York law because the Agreement contains a choice of law provision selecting New York law.  (Motion at 8.)  However, Plaintiff alleges that the Agreement involved an illegal purpose and is therefore unenforceable.

(Complaint ¶ 17.) As a general rule, courts will not assist in enforcing an agreement that is either illegal, or has an objective contrary to public policy. Dunkin v. Boskey, 82 Cal. App. 4th 171, 183 (2000). At this stage of the litigation, the Court lacks sufficient information to determine whether the Agreement is enforceable. Thus, the Court defers consideration of whether the choice of law provision in the Agreement applies. The Court proceeds to the second choice of law analysis under the assumption that the Agreement is unenforceable.

When there is no agreement in advance on the applicable law, a choice of law question arises when a party before a California court contends that another state's law, rather than California law, should be applied to decide the case. McCann v. Foster Wheeler, 160 Cal. App. 4th 689 (2008). In that situation, the court is required to employ California's choice of law principles based on an analysis of "governmental interests." See id.; see also Tucci v. Club Mediterranee, S.A., 89 Cal. App. 4th 180, 189 (2001). Only when a conflict exists does the court inquire into the governmental interests of each respective state. Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1263-64 (9th Cir. 1978). Even where there is a conflict, if the application of a foreign law does not significantly advance the interests of the foreign state, the court applies California law. Id. The proponent of out-of-state law bears the burden of establishing a meaningful conflict between the laws of California and the foreign state. Homedics, Inc. v. Valley Forge Ins. Co., 315 F.3d 1135, 1138 (9th Cir. 2003). When neither party identifies a meaningful conflict between California law and that of another state, the application of California law is appropriate. Id.

With respect to Plaintiff's Fraud and Unjust Enrichment claims, Defendants have failed to identify any meaningful difference between California and New York law. Since Defendants have not met their burden to establish a conflict, the Court applies California law to Plaintiff's Fraud and Unjust Enrichment claims.

With respect to Plaintiff's Unfair Competition claim, Defendants have identified that California has a four year statute of limitations in contrast to New York's three year statute of limitations. See Cal. Bus. & Prof. Code § 17208; See N.Y. C.P.L.R. § 214(2). There is no dispute

1  that this creates a conflict between the laws of each state. This conflict is meaningful because it may
2  affect whether Plaintiff is able to state a claim for Unfair Competition. However, Defendants do not
3  identify how application of the New York law will advance the governmental interests of New York.
4  Instead, Defendants contend that Plaintiff's Unfair Competition cause of action should be dismissed
5  because it was not framed under New York law. (Motion at 22.) In contrast, courts in California
6  have made it clear that California's UCL supports a significant governmental interest and that
7  application of another forum's law, which would prevent a UCL claim from going forward, is
8  disfavored. See Net2Phone, Inc. v. Superior Court, 109 Cal. App. 4th 583, 591-92 (2003); see also
9  Rothschild v. Tyco Internat, Inc., 83 Cal. App. 4th 488, 493 (2000); People ex rel. Mosk v. National
10 Research Co., 201 Cal. App. 2d 765, 770 (1962); Hall v. Superior Court, 150 Cal. App. 3d 411
11 (1983). Accordingly, the Court applies California law to Plaintiff's Unfair Competition claim.

**B.    Unjust Enrichment Claim**

Defendants move to dismiss Plaintiff's Unjust Enrichment claim on the ground that the Agreement governs the claim. (Motion at 20.)

Under California law, "[u]njust enrichment is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004); see also McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1490 (2006). Thus, unjust enrichment is a theory of recovery, not an independent legal claim. IB Melchoir v. New Line Productions, Inc., 106 Cal. App. 4th 779, 793 (2003). An unjust enrichment theory underpins a claim for restitution, which "requires the defendant to restore plaintiff to his or her original position." County of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 542 (2007). Therefore, the Court construes Plaintiff's cause of action as one for Restitution.[3]

It is true that restitution is an "action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." Paracor Fin., Inc. v. Gen.

---

[3] While the Court construes Plaintiff's Second Cause of Action as Restitution instead of Unjust enrichment, Plaintiff should properly allege restitution in any Amended Complaint.

7

Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (citing Wal-Noon Corp. v. Hill, 45 Cal. App. 3d 605, 613 (1975)). However, as noted above, Plaintiff raises the issue of whether the contracts that constitute the Agreement are unenforceable. (Complaint ¶ 17.) Accordingly, the Court defers consideration of whether the Agreement precludes Plaintiff's Restitution claim.

## C.  Statutes of Limitations

Defendants move to dismiss all of Plaintiff's claims on the ground that they are time-barred under relevant statutes of limitations. (Motion at 8-15.)

If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

With respect to Plaintiff's three claims, the relevant statutes of limitations are as follows: California's statute of limitations for fraud is three years from "the discovery, by the aggrieved party, of the facts constituting the fraud . . ." Cal. Civ. Proc. § 338(d). The statute begins to run when "one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." Von Brimer v. Whirlpool Corp., 536 F.2d 838, 848 (9th Cir. 1976) (quoting Hobart v. Hobart Estate Col., 26 Cal. 2d 412, 437 (1945)). Quasi-contract claims, such as restitution, are subject to a two year statute of limitations. See Cal. Civ. Proc. § 339(1). However, this period is not deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party. Id. Unfair competition claims are subject to a four year statute of limitations. See Cal. Bus. & Prof. Code § 17208. However, California law permits delayed accrual of a statute of limitations until a plaintiff knew or should have known of the wrongful conduct at issue. El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032 (2003). "The purpose of the discovery rule is to protect those who are ignorant of their cause of action through no fault of their own." Id. at 1038. Since each of these claims is governed by a type of discovery rule, the Court proceeds to consider whether certain events would have caused Plaintiff to discover his claims.

On December 27, 1999 and again on September 5, 2000, the IRS published Notices, which disallowed Son of BOSS transactions. (Complaint ¶¶ 21, 22.) However, the Complaint does not

8

1 allege when Plaintiff found out about these notices.  While it appears that Plaintiff eventually
2 discovered these notices, Plaintiff alleges that an attorney at Sidley wrote him a letter in February
3 2001 to assure him that the IRS Notices did not implicate his transactions.  (Complaint ¶¶ 16, 24.)
4 Understanding that an IRS Notice applies to a transaction in which a tax payer has engaged is more
5 than is required of an ordinary tax payer, especially in light of attorney advice to the contrary.  See
6 Seippel v. Sidley, Austin, Brown & Wood, LLP, 399 F. Supp. 2d 283, 291-92 (S.D.N.Y. 2005).
7 Thus, Plaintiff cannot be deemed to have discovered his claims based on these IRS Notices.

8 The Court next considers whether Plaintiff was on notice of the alleged fraud by the summer
9 of 2004, when the IRS disallowed his deductions and he commenced his tax court proceedings.[4]
10 However, a preliminary advisement that certain deductions will be disallowed does not place a
11 taxpayer on inquiry notice of alleged fraud relating to a tax shelter, so as to commence the running
12 of statute of limitations, when the taxpayer is specifically assured by promoters that the shelter is
13 legitimate.  See Seippel, 399 F. Supp. 2d at 291-92, 297.  Rather, the taxpayer's claim accrues when
14 the deductions are actually disallowed.  See Hernandez v. Childers, 806 F. Supp. 1368, 1371-72
15 (N.D. Ill. 1992).  In this case, Plaintiff received a letter from the IRS disallowing his deductions.
16 Nonetheless, Plaintiff commenced tax court proceedings challenging the IRS.  This action suggests
17 that he believed his transaction was legitimate.  Even if Plaintiff had suspected that his transaction
18 might not be legitimate, he may not have known that Defendants had concealed their role in the
19 transaction.[5]  Thus, from the face of the Complaint, Plaintiff cannot be considered to have
20 discovered his cause of action based on these events.

21 The Court finds that neither of the IRS published Notices for the tax adjustment or the tax
22 court proceedings reveal facts sufficient to determine that Plaintiff was on notice of Defendants'
23 alleged illegal conduct.  Furthermore, since Plaintiff does not allege when the tax court proceedings

---

[4] Defendants request that the Court take judicial notice of Plaintiff's tax court proceeding. See note 3 supra.

[5] Plaintiff alleges that Defendants claimed to be a "neutral" broker throughout the transaction.  (Complaint ¶¶ 13-14.)

9

were finalized, there is insufficient information to determine when Plaintiff did have notice, which would cause the statute of limitations to begin to run with respect to Plaintiff's Fraud claim. Since the statute of limitations under California law for Plaintiff's other two causes of action also requires Plaintiff to be on notice of Defendants' alleged illegal act, the Court similarly finds that there are insufficient facts alleged in the Complaint to determine when the statute of limitations for those claims began.

Accordingly, the Court finds that, under the facts as alleged in the Complaint, the statute of limitations has not run with respect to all three of Plaintiff's causes of action.

### D.     **Federal Rule of Civil Procedure 9(b)**

Defendants move to dismiss Plaintiff's First Cause of Action for Fraud on the ground that Plaintiff has failed to plead fraud with particularity in accordance with Fed. R. Civ P. 9(b). (Motion at 15.)

Rule 9(b) of the Federal Rules of Civil Procedure provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Under this pleading standard a plaintiff must identify "the circumstances constituting fraud" with sufficient particularity "so that the defendant can prepare an adequate answer." Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).

To plead circumstances constituting fraud, a plaintiff must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG, LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations and quotations omitted).[6] When claiming fraud involving multiple defendants, the plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme. Id. at 765.

---

[6] Defendants also contend that Plaintiff is required to make additional allegations with respect to fraud by omission or concealment. (Motion at 18.) The Court finds that fraud by concealment is subsumed in its analysis of fraud pursuant to Rule 9(b).

10

With respect to his Fraud claim, Plaintiff alleges as follows:

> A representative of Arthur Andersen presented Plaintiff with a purportedly legal tax shelter "in or about 2000." (Complaint ¶ 12.) Defendants knowingly created an illegal tax shelter which they marketed and sold to Plaintiff as a legitimate transaction. (Id. ¶ 28.) Defendants concealed both their involvement in creating the Son of BOSS tax shelter and the kick-back fees received by Arthur Andersen for its part in promoting the scheme to Plaintiff. (Id.) In an effort to promote the Son of BOSS transaction, Defendants created documents giving the transaction an appearance of legitimacy and customization, even though Defendants knew the tax shelter was in violation of the Internal Revenue Code and was being mass marketed to numerous clients. (Id. ¶¶ 25, 28.)

With respect to whether the above paragraphs put Defendants on notice as to the contents of their alleged misrepresentations, the Court finds as follows: First, the allegations state that Defendants promoted and sold to Plaintiff an illicit tax shelter which Defendants knowingly misrepresented as being legal. Second, the allegations identify the representations that were made to Plaintiff and why the statements are alleged to be false.

However, with respect to whether the above paragraphs provide Defendants with information as to who made the alleged fraudulent representations, and when and where those statements were made, the Court finds as follows: First, Plaintiff consistently refers to Defendants collectively either as "defendants" or "AIG" without describing the role each particular Defendant played in the alleged fraudulent scheme. Referring to Defendants in this manner does not put each individual Defendant on notice as to which allegations it must respond. Second, Plaintiff allege that the fraud took place "in or about 2000." For the purposes of Rule 9(b), the Ninth Circuit has recognized that a period of time spanning a fiscal quarter represents an adequate allegation of the time in which fraud took place. See Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). However, Plaintiff's broad allegation represents a span of time potentially greater than a year, which is insufficient under Rule 9(b). Finally, Plaintiff's geographical reference to the Northern District of California also fails to satisfy the particularity requirements of Rule 9(b). While the Ninth Circuit has recognized that allegations of false statements made within the context of financial statements satisfy the requirement of alleging with particularity where fraud took place,[7] Plaintiff does not adequately

---

[7] See Cooper, 137 F.3d at 627.

11

1 specify which of the promotional materials or documents contained fraudulent representations by
2 Defendants, as opposed to other parties involved in the transaction at issue.

3 In sum, the Court finds that Plaintiff has failed to plead the time, place, and identities of the
4 parties to the alleged fraudulent representations. Accordingly, the Court GRANTS Defendants'
5 motion to dismiss Plaintiff's First Cause of Action for Fraud on the ground that Plaintiff has failed to
6 sufficiently plead this claim in accordance with Rule 9(b). The Court will grant Plaintiff leave to
7 amend as the defects identified by the Court are curable.

### F.     Right to Trial by Jury

9 Defendants move to strike Plaintiff's demand for trial by jury on the ground that Plaintiff
10 agreed to waive his right to a jury trial in the Agreement. (Motion at 23.)

11 The right to a jury trial in federal court is governed by federal law; under federal law, parties
12 may contractually waive their right to a jury trial. Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d
13 835, 837 (10th Cir. 1988). As explained in Okura & Co., Inc. v. Careau Group, 783 F. Supp. 482,
14 488 (C.D. Cal. 1991), "While the right to civil jury trial is a fundamental constitutional right, it may
15 be waived by a contract knowingly and voluntarily executed."

16 In this case, the Court has already stated that it lacks sufficient information to determine
17 whether the Agreement is enforceable at this stage of the litigation. Accordingly, the Court DENIES
18 Defendants' motion to strike Plaintiff's demand for a jury trial as premature. Defendants may raise
19 this issue in a future disposition motion once discovery is completed.

### V.  CONCLUSION

21 The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss with leave
22 to amend. Plaintiff shall file an Amended Complaint within fifteen (15) days of the date of this
23 Order.

25 Dated: May 8, 2008

JAMES WARE
United States District Judge

12

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

France Jaffe france.jaffe@dechert.com
Jennifer Lee Jonak jenny@jonak.com
William M. Lukens wlukens@lukenslaw.com

**Dated: May 8, 2008**                                **Richard W. Wieking, Clerk**

                                                      **By:  /s/ JW Chambers**
                                                            **Elizabeth Garcia**
                                                            **Courtroom Deputy**

**United States District Court**
For the Northern District of California